ARGUED AND DETERMINED

# IN THE SUPREME COURT

OF THE

## TERRITORY OF WYOMING.

### MARCH TERM, 1879.

## McLaughlin v. Upton, Assignee.

BANKRUPTCY.—The object of the bankrupt act is to secure to creditors the largest benefit of a common fund, by speed and economy in the administration of it.

LIMITATIONS.—The clear intention of the act was to impose two years as the absolute limit to the capacity of the assignee, within which to sue or be sued,—and this in order to promote dispatch in the liquidation of the bankrupt estate by avoiding the indefinite, wasteful, and vexatious delays, which would be necessarily consequent upon the power of waiver, was the act a limitation of the remedy alone. Hence, after the two years, for all the purposes of suit being commenced by or against the assignee, his office has expired and his existence ceased.

JURISDICTION.—As the assignee is powerless to acquire, so the court is powerless to admit him to a status within the court. This want of power is want of jurisdiction. Want of jurisdiction is a radical, and therefore incurable defect. The parties cannot waive, nor can the court ignore it. A court does not create its jurisdiction: it must accept and confine itself to what is created for it : hence *ex necessitate* such defect of jurisdiction carries its object with it ; appearing in the case, it is the imperative duty of the court, of its own motion, to treat the proceedings as null and to dispose of them accordingly.

ERROR to the District Court of Laramie County.

The plaintiff in error was a subscriber to ten shares of the capital stock of the Great Western Insurance Company, of Chicago, Illinois, upon which he had paid twenty per cent. The original suit was brought by the assignee to recover the amount unpaid on the par value of the stock. The petition in the court below, alleged that the defendant was a subscriber for ten shares of the capital stock of the

Great Western Insurance Company, of the par value of one hundred dollars per share, that he had paid upon the same twenty per cent., or two hundred dollars, that there was remaining due and unpaid on said ten shares of stock, eighty per cent., or eight hundred dollars, with interest. That the Great Western Insurance Company had become bankrupt and unable to meet its liabilities, and had been duly adjudicated a bankrupt by decree of the U. S. district court of the northern district of Illinois, that on the 11th day of April, A. D. 1872, the plaintiff, Clark W. Upton, had been duly appointed assignee of said bankrupt, and on that day the deed of assignment had been executed to him.

That by order of the court in which the bankruptcy proceedings were pending, an order was made that the balance due on the stock should be paid in by the stockholders to the assignee on or before the 15th day of August, A. D. 1872.

That notice had been served upon defendant to pay the balance unpaid on the stock held by him, to the plaintiff as assignee, but that defendant had failed to pay the same.

That the bankrupt corporation was largely indebted, had no assets save the amount due it from its stockholders, upon their unpaid stock, and that it was necessary to collect the amount due and unpaid upon such stock, in order to liquidate the liabilities of the bankrupt corporation.

The petition prayed judgment against defendant for the amount unpaid upon his stock, with interest.

The petition was filed in the court below, on the 8th day of April, A. D. 1876. The defendant, McLaughlin, answered, denying each and every allegation of the petition, except the allegations that the Great Western Insurance Company was a corporation as alleged, and it had been adjudicated a bankrupt, and that the plaintiff, Clark W. Upton, had been appointed assignee, and the allegation that the defendant was a resident of Wyoming Territory. Defendant specially denied that he was indebted to plaintiff, or to the Great Western Insurance Company in any manner or in any sum whatever. Defendant also alleged that

he entered into a written contract with the Great Western Insurance Company, to purchase ten shares of its capital stock, at and for the sum of two hundred dollars, which amount he had paid by the 19th day of August, A. D. 1871.

Defendant further alleged that at the time of entering into the contract of subscription for said shares of stock, he was a resident of the Territory of Wyoming, and was not bound to know and did not know the laws of the state of Illinois, under which the Great Western Insurance Company was organized. That the Great Western Insurance Company represented to defendant, at the time he subscribed to said ten shares of stock, and entered into the contract with said company, that the said shares of stock would be forever non-assessable, and that the defendant would never be liable or be called upon for any other sum of money, under said contract and said ten shares of stock, than said sum of two hundred dollars; that relying upon such statements and representations, and believing the same, the defendant entered into said contract. That such representations of the Great Western Insurance Company made to induce the defendant to enter into said contract, were false and fraudulent when made, and have ever since so continued, and were known by said Great Western Insurance Company to be false and fraudulent when made.

And as a cause of action and offset against the plaintiff, the defendant alleged that the Great Western Insurance Company, before it was adjudicated a bankrupt, was indebted to him in the sum of $341.25 upon account, with interest since September, 1872, for which amount he prayed judgment. The plaintiff below demurred to the second, third and fourth defenses set up in the answer. The court overruled the demurrer to the second and third defenses in the answer, and sustained it as to the fourth.

The case was tried by a jury.

Upon the trial of the cause, the plaintiff below offered in evidence a copy of the charter of the Great Western Insurance Company. To the admission of which, in evidence, the defendant below objected as irrelevant, incompetent and

immaterial: the objection was overruled. The plaintiff also offered in evidence the record of proceedings to increase the capital stock of the Great Western Insurance Company, which was objected to by the defendant, and the objection overruled. The plaintiff offered in evidence the certificate of the auditor of state of the state of Illinois, authorizing the Great Western Insurance Company to do business. Also the petition for adjudication and rule to show cause in bankruptcy proceedings against the Great Western Insurance Company and order of appointment of the assignee. Also the order of adjudication of bankruptcy. Also the notification of appointment of assignee, and acceptance. Also the deed of assignment to assignee. Also the call upon the stockholders for balance due upon stock. Also the call upon stockholders by the assignee, and proof of publication of the same by the certificate of publication.

Plaintiff also offered in evidence the statutes of the state of Illinois, known as Gross Statutes of Illinois, and a copy of the stock ledger of the Great Western Insurance Company. All of which was objected to by the defendant, and objections overruled.

The plaintiff below called the defendant, D. McLaughlin, as a witness, and examined him as to the entering into the contract of subscription for the ten shares of stock of the Great Western Insurance Company, introducing in evidence the bond or contract entered into by said defendant. Upon cross-examination, the witness, McLaughlin, was asked to state the circumstances under which he signed the bond or contract; to which plaintiff below objected as immaterial and irrelevant, which objection was sustained by the court. And the defendant then and there excepted.

The plaintiff below offered in evidence a copy of the notice of stock assessment by the assignee, to the introduction of which in evidence the defendant objected as irrelevant, incompetent and immaterial; and upon the objection being overruled, excepted.

Upon the part of the defendant, and to maintain the issues presented by the answer of defendant, the defendant,

Daniel McLaughlin, was called as a witness, and was asked to state all the facts and circumstances connected with his signing the bond No. 1880, and its delivery to the Great Western Insurance Company; what statements and representations, if any, were made to him by the company relating to the subject matter of said bond; to which plaintiff objected as immaterial and irrelevant, which objection was sustained by the court, to which ruling the defendant excepted.

The defendant was also asked as a witness to state what, if anything, occurred between him and the Great Western Insurance Company, after the return of his bond and prior to the bankruptcy of said company, relative to its attempt to levy an assessment upon his stock; to which plaintiff objected as immaterial and irrelevant, which objection was sustained by the court, to which the defendant excepted.

The jury found for the plaintiff below

*W. R. Steele,* for plaintiff in error.

The cause of action alleged was one existing in favor of the defendant and against the assignor, before the bankruptcy of the assignor. The assignee succeeds only to the rights of the assignor, and there may be a set-off of mutual debts existing at the time of bankruptcy. Revised Statutes of the U. S., secs. 5046, 5047, 5073; Code of Civil Procedare, Wyoming, sec. 97; *Tucker* v. *Oxley,* 5 Cranch, 34; *Hade* v. *McVey et al.,* 31 Ohio State, 231; *American Bank* v. *Wall,* 56 Maine, 167; *Miller* v. *Receiver of Franklin Bank,* 1 Paige, 444; *Colt* v. *Brown,* 12 Gray, 233; *Holbrook* v. *Receiver Amer. Fire Ins. Co.,* 6 Paige, 220; *Olive, Assignee* v. *Smith,* 5 Taunton, 66.

The court erred in admitting the certified copy of the charter of the Great Western Insurance Company. It was neither the original charter of the company, nor a copy authorized to be used as evidence by the laws of Wyoming. Compiled Laws of Wyoming, p. 245, article 4.

It was competent for the legislature of Wyoming to prescribe the rules of evidence in its courts, as well as to reg-

ulate the rights of foreign corporations doing business in the territory. *Inn* v. *Comstock*, 3 Sawyer, C. C. Repts., 218.

The record of the proceedings to increase the capital stock of the Great Western Insurance Company was improperly admitted, for the reasons stated *supra*, and that they were incompetent, irrelevant and immaterial.

The court erred in the admission in evidence of the annual statement of the condition of the company, by the auditor of the state. It was incompetent, irrelevant and immaterial. The court erred, in admitting in evidence the certificate of the auditor of public accounts of the state of Illinois authorizing the Great Western Insurance Company to do business. It was incompetent, irrelevant and immaterial, and was not properly authenticated. Revised Statutes of the U. S., sec. 906.

The court erred in admitting in evidence the petition and rule to show cause in the bankruptcy proceedings against the Great Western Insurance Company. The evidence was incompetent, irrelevant and immaterial, and tended to prove no issue in the cause.

The court erred in admitting in evidence the certificate of appointment of Clark W. Upton, assignee; the adjudication of bankruptcy of the Great Western Insurance Company; the notification of the appointment of the assignee and his acceptance. The evidence was incompetent, irrelevant and immaterial, and tended to prove no issue in the cause.

The court erred in admitting in evidence the deed of assignment to the plaintiff below, as assigns of the Great Western Insurance Company. It was incompetent, immaterial and irrelevant. And when offered in evidence, disclosed that the authority of the assignee to maintain any action had expired. Revised Statutes of the U. S., sec. 5057.

The objection was in the nature of a demurrer, *ore tenus* to the petition. *Curtis* v. *Cutler*, 7 Nebraska, 315.

The court erred in admitting in evidence the call upon the stockholders made by the court, and also the call made by the assignee upon the stockholders. The evidence was incompetent, immaterial and irrelevant, and it had been

shown by the deed of assignment already in evidence, that the assignee, plaintiff, had no right of action against the defendant.

The court erred in admitting in evidence the copy of the published call upon the stockholders, for the reasons stated *supra,* and because there was no proper proof of publication; such publication is a fact to be proven by the ordinary rules of evidence. There is no rule of evidence authorizing such proof to be made by the certificate of the publisher of a newspaper.

The court erred in admitting in evidence Gross' Statutes of Illinois, and the copy of stock ledger of the Great Western Insurance Company, for the reason stated *supra,* and also that the proper foundation for their introduction had not been laid.

The court erred in refusing to allow the defendant to testify as to the circumstances under which he signed the contract or bond to the Great Western Insurance Company, when called as a witness by the plaintiff to prove his signature. If the plaintiff saw fit to call the defendant, as a witness to prove that defendant signed the paper; then it was proper and legitimate cross-examination, to show under what circumstances the defendant entered into the contract.

The court erred in instructing the jury that if the plaintiff had established certain facts they must find for the plaintiff when this instruction was given; the evidence of the plaintiff established that he had no power or right to maintain an action in any court, and the jury should have been so instructed. The foregoing proposition, and the error assigned in refusing a new trial, for the reasons that: The verdict was not sustained by sufficient evidence; and that: The verdict was contrary to law, may be considered together.

Sec. 5057, Revised Statutes, U. S., is as follows: "No suit either at law or in equity, shall be maintainable in any court, between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to, or vested in such as-

signee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

This provision of the statutes, is not a mere limitation upon the remedy, it is an extinction of the right. Congress had undoubted power in passing the bankrupt act, to provide what courts should have jurisdiction, what rights the assignee should have, and for what time such rights should exist.

The right of the assignee was a statutory right, and his exercise of that right within the time fixed by statute, was a condition precedent to its exercise at all. *Pittsburgh etc. Company* v. *Hine*, 25 Ohio State, 629.

The statute not only affected the right of the assignee, but also the jurisdiction of the court. The language of the statute is : " No suit shall be maintainable in any court."

This language is comprehensive enough to deprive any court of the power to exercise jurisdiction in any action brought by an assignee, after the expiration of two years from the accruing of the cause of action in his favor.

Webster defines maintainable, " capable of being maintained, sustainable." Worcester's definition is, " that may be maintained, tenable, that may be supported by argument."

Under an " act requiring compensation " for the causing of death by wrongful act, neglect or default, which gave a right of action, provided such action shall be commenced within two years after the death of such deceased person, the proviso is a condition qualifying the right of action and not a mere limitation on the remedy. *Pittsburgh, etc. Railway Co.* v. *Hine*, 25 Ohio State, 629. The law never deliberately takes away all remedy, without an intention to destroy the right. *Moore* v. *Luce*, 29 Pa. State, 260; *Leffingwell* v. *Warren*, 2 Black, 599.

The liability of stockholders upon their unpaid subscriptions is that of debtors, and passed to the assignee. *Terry* v. *Anderson*, 5 Otto, 636.

The cause of action accrued to the plaintiff below, as assignee upon the 11th day of April, A. D. 1872, the date upon which the deed of assignment was executed to him by

the register in bankruptcy. *Foreman, assignee* v. *Bigelow*, Central Law Journal, vol. 9, No. 22, p. 430.

The cause of action in favor of the plaintiff below, was barred by the provisions of the bankrupt law, limiting the right of the assignee to sue. *Walker, assignee* v. *Tower*, 4 Dillon C. C. Repts., 165 ; *Payson, assignee* v. *Coffin*, 4 Dillon C. C. Repts., 386 ; *Bailey, assignee* v. *Glover*, 21 Wallace, 342 ; *Cogdell* v. *Exum*, 12 Am. Repts., 656 ; *Foreman, assignee* v. *Bigelow, supra.*

The provision of section 5057, of the Revised Statutes of the United States, is, that no action shall be maintainable in any court, by an assignee, unless brought within two years from the time when the cause of action accrued for such assignee ; this provision is essentially different from the ordinary statutes of limitation, which provide : That actions can only be brought within certain periods, after the cause of action shall have accrued. The language of the United States statute is equivalent to saying : That no court shall entertain jurisdiction of any cause, unless it be brought within two years after it shall have accrued to the assignee. Where it appears upon the face of the record that the court has no jurisdiction of the cause, the failure to set up the want of jurisdiction by plea is no waiver of the objection. *Steamboat Buell* v. *Long*, 18 Ohio State, 521 ; *Hughey* v. *Sidwell*, 18 B. Monroe, 529 ; *Thompson* v. *Steamboat, etc.*, 2 Ohio State, 28. If a court has no jurisdiction of the subject-matter of a suit, consent of parties can never give it. *Lee* v. *Mason*, 1 Scammon, 249. A plaintiff may assign for error, want of jurisdiction of the court in which he instituted his action. *Capron* v. *Van Noorden*, 2 Cranch, 126.

*Johnson & Potter*, for defendant in error.

This case presents the simple question : Whether a stockholder in a bankrupt corporation is liable to the assignee in bankruptcy, for the unpaid balance due on stock held by him, even though, by agreement between company and stockholder, the stock was non-assessable

after payment of a certain per cent. of the face or par value?

The errors complained of in the ruling upon the demurrer to the fourth defense, in the answer, and on all offers of testimony to sustain that and the third defense, are obviated by the consideration that, the demurrer to both defenses should have been sustained, as neither constitute a defense; and if so, it was not error to exclude testimony to sustain them, nor to instruct the jury to that effect. *Hitchcock* v. *Rolls*, 3 Biss-cc., 276; *Sawyer* v. *Hoag*, Id., 293; *Upton* v. *Hansbrough*, Id., 417; *Upton* v. *Burnham*, Id., 431; *Upton* v. *Burnham*, Id., 520; *Upton* v. *Tribilcock*, 1 Otto, 45; *Sanger* v. *Upton*, Id., 56; *Webster* v. *Upton*, Id., 64; *Chub* v. *Upton*, 5 Otto., 665; *Pullman* v. *Upton*, 6 Otto, 328.

The second defense of the answer, and McLaughlin's testimony and his stock certificate, admitted his position as a stockholder, the existence and bankruptcy of the corporation, etc., and rendered the previous testimony, to establish those facts, unnecessary, and renders nugatory any attempt to found rights or wrongs on alleged errors concerning the same. Opinion in *Chub* v. *Upton*, 5 Otto, 669.

The verdict is presumed to be supported by evidence, unless the record purports affirmatively to contain all the evidence in the case. This record, on the contrary, affirmatively shows it does not. Powell on App. Pr., sec. 7, p. 213.

Under authorities heretofore cited, settling the law on this whole question, the court could properly have charged the jury to find for plaintiff, leaving to them the assessment of damages, under proper instructions as to the measure.

According to the established practice of this court, only such questions will be reviewed as were presented to the court below by motion for new trial, properly filed, as required by law. In this case, there being no such motion, the court did not err in overruling or ignoring it. *Markwood & Niman* v. *Doriat*, 21 Ohio St., 637; *McKillop* v. *Empire Mills*, 2 Nov., 34; *Bear R. & A. M. Co.* v. *Boles*, 24 Cal., 354; *Coney* v. *Silverthorn*, 9 Cal., 67; *Mahon* v.

*Cox*, 15 Cal., 313; *Ellsasser* v. *Hunter*, 26 Cal., 279; *Board-man* v. *Beckwith*, 18 Iowa, 292; *Odell* v. *Seargent*, 3 Kans., 80; *Most* v. *Parkhurst*, 2 Hill, 372; *Wells Fargo* v. *Preston*, 3 Neb., 446; *Fox* v. *Meacham*, 6 Neb., 531; *Harris* v. *Ray*, 15 B. Monroe, 628; *Duffy* v. *Moran*, 12 Nev., 94; *Waite* v. *Van Allen*, 22 N. Y., 319; *Salles* v. *Butler*, 27 Id., 638; *Campbell* v. *Jones*, 41 Cal., 515; *Cattle* v. *Litch*, 43 Id., 320; *F. Cumming* v. *Hartford Fire Ins. Co.*, C. L. J., Nov. 23, '77; C. L. J., Jan. 29, '79.

PECK, J.  It appears on the part of the assignee the plaintiff below, that on the 14th day of February, 1871, the company made a contract dated on the 6th of the month, with McLaughlin, of the sale to him of ten shares of its unpaid capital stock of the par value of $1,000 ; for the consideration of $700, in full: that in pursuance of the contract the ten shares were delivered on its execution, and $200 paid by the 19th day of August following.  The suit is to recover upon the contract $800, the balance of the par value of the ten shares, as a balance due by the contract, and interest. Whether the district court having jurisdiction the assignee could recover upon that contract, as for a balance and its interest ; or in order to recover, should have rescinded the contract, as void (for fraud) against the company, and have sued for damages committed by the fraud, which consisted of that transaction, and of which the instrument of February 6th was but an element, are questions, that we do not consider, because of our conclusions upon the antecedent subject of jurisdiction.  If the court having jurisdiction, there is such right of recovery upon the contract, it arises by converting a contract, which in terms—and they are most explicit to that effect, because mutually executed on the payment of the $200—into an executory contract against McLaughlin as to the $800 and interest, and this to effectuate the principle, that the laws, which required the company to affix a par value to its stock, also forbade its parting with the stock, except for an actual and *bona fide* equivalent, so

as to protect creditors, by enabling them to rely absolutely upon its capital as actual not fictitious. The assignee treats the contract executory upon this principle, and seeks to recover upon it accordingly. Hence by the theory of the suit the alleged claim is for a balance of the price or value of unpaid stock, which balance if due at all, was due on the 14th day of February, 1871, when the stock was delivered, and therefore on the 11th day of April, 1872, when the assignee was appointed, 22 How., 380, *Ogilvie* v. *Knox Ins. Co.* ; 5 Otto, 628, *Perry* v. *Anderson.* It also appears on the part of Upton that the bankrupt court on the 5th day of July, 1872, duly ordered this balance to be paid to him by August 15th, 1872, and that in pursuance of that order notice was given to McLaughlin on the 15th day of the same July. Therefore, whether the date, at which the alleged claim accrued to the assignee be treated as the date of his appointment, or the date designated in the order for payment, is immaterial to the enquiry whether the district court had jurisdiction of the suit, for in either view more than two years had expired before the maturity of the claim and his commencement of suit.

The bankrupt act of March 2, 1869, at sections 2 and 14, U. S. S. at L., 518, declares that " no suit at law or in equity shall in any case be maintainable by or against the assignee in bankruptcy, or by or against any person claiming an adverse interest towards any property or rights of property transferable to or vested in such assignee in any court whatsoever, unless the same be brought within two years from the time when the cause of action accrued for or against such assignee: provided, that nothing herein contained shall revive a right of action barred at the same time such assignee is appointed." The bankrupt acts of section 5057 of the U. S. Rev. Stats., declares, "that no suit in law or equity shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee unless brought

within two years from the time when such cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action, barred at the time, when an assignee is appointed." The sections are identical in substance. The statute creates an officer unknown, and for purposes unknown to the common law; what it creates, it can limit: the officer has his origin in the statute, his existence begins and ends in it, and his capacity is measured by it. The difference between the objects respectively aimed at by a statute of merely remedial limitations and the present statute, indicates the difference between the constructions which are to be applied to them. The former seeks to protect a party from an alleged liability upon a claim, that after a prescribed period is presumed to be fictitious, either because it never existed, or, if it did, has been satisfied; the latter to secure to creditors the largest benefit of a common fund, by speed and economy in the administration of it, the paramount importance of which purpose is peculiar to a bankrupt act is manifest from the indefinite variety, extent and complications of assets to be administered and of claims to be adjusted against them. The clear intention of the act in question was to impose two years as the absolute limit to the capacity of the officer, within which to sue or be sued,— and this in order to promote dispatch in the liquidation of the bankrupt estate by avoiding the indefinite, wasteful and vexatious delays, which would be necessarily consequent upon the power of waiver, were this provision a limitation of the remedy alone. The last clause of each section, namely, that it shall not in any case revive a right of action, barred when the assignee is appointed, completely matches this construction; and it would be inconsistent with the body of the act, were that to be construed, as a mere limitation upon the remedy, for thus it would in one breath forbid the revival of actions barred at the time of the appointment and permit the revival of whatever right becomes subsequently barred—a senseless incongruity. Hence, after the two years,

for all the purposes of suit being commenced by or against the assignee, his office has expired and his existence ceased. As he is powerless to acquire, so the court is powerless to admit him to a status within the court. This want of power is want of jurisdiction. We should not hesitate so to construe the statute were it to read: "no suit shall be commenced in any court," instead of, "no suit shall be maintainable in any court," as it now reads; "maintainable" signifies capable of being maintained; "not maintainable" incapable of being maintained. Declaring that no suit shall be capable of being maintained if commenced after the two years, or that every suit commenced after that period, shall be incapable of maintainance, the section declares that a suit so commenced, shall be a subject on which no court shall act, that is, shall be capable of acting. But the words, "not maintainable," are employed *ex industria*, intending to preclude all doubt, that might attend an implied construction, by inhibiting in express and explicit terms the officer and claimant from instituting suit after the prescribed period; and the courts from entertaining it, if instituted. This is the special function of the terms, "not maintainable," as employed in the context. They go beyond the parties, and reach the very jurisdiction of the court, defining it as to subject matter. This construction of the two years clause concurs with the unmistakable spirit and intent of the rest of the act; in its consistent and careful provisions for suits, summary hearings, compromise and other proceedings essential to the administration of the estate, it exposes the one general purpose of thrifty conversion and early distribution. The provision then which is under enquiry is jurisdictional; and a suit, instituted in violation of it, would be *coram non judice* and void. Since reaching this conclusion, we have examined *Baily, Assignee · in bankruptcy of Benjamin Glover* v. *Glover et als.*, 21 Wall., 342; we derived the impression at the hearing that the case expressed only a *dictum* in favor of this view; we find that it has a graver aspect. It was a

suit in equity brought by Baily against Elenor Glover and others in the circuit court of the United States for the southern district of Alabama, to vacate a conveyance of property, made by the bankrupt to the defendants in fraud of the act: it appeared by the bill that the assignee was appointed on the 1st day of December 1869, and brought the suit on the 20th day of January 1873; that the fraud was committed prior to the appointment, but kept secret by the parties to it from the assignee, so that he was prevented from discovering it until within two years next before the commencement of the suit; the defendants demurred, the demurrer was sustained by the court below, and the assignee appealed; the supreme court reversed with a modification sustaining the general principle of the decree below, simply modifying its application to the special features of fraud. The opinion of the court was delivered by Mr. Justice Miller; he says of the second section of the act of 1867, " this is a statute of limitations and is precisely like other statutes of limitations," and stopping at this remark a hasty conclusion would be that he was speaking of the statute as merely an act of limitation; upon the remedy it is however observable that the expression viewed literally does not indicate whether it referred to an act of remedial, or to one of jurisdictional limitations; the context, however, unmistakably indicates that it referred to the latter, and this we proceed to show. If a bar of limitations is simply remedial, it does not impair the right of action or defence, cannot be raised by demurrer, can only be raised by plea, and this whether the facts on which it is raised, do or do not previously appear in the record; if the bar of limitations is jurisdictional it does impair the right of action on defense, and may be raised by demurrer on motion, when the ground of the bar appears in the record; if the facts do not so appear, they must be pleaded in order to prevent the jurisdictional bar; this distinction between the several functions of a demurrer and a plea under a limitation act is a perfect key to *Baily* v. *Glover and others*, sufficing to

determine its scope as a decision. The demurrer was interposed upon the theory that the section prescribed a jurisdictional bar and that, in applying the bar, the time would be computed from December 1st, 1869, the date of the assignee's appointment, and not from the discovery by him of the fraud; the demurrer might have been overruled upon either of two grounds: one, that the bar was remedial, the other, that it was jurisdictional; but in applying it as such, the time would be computed from his discovery of the fraud; but the demurrer could have been sustained only upon the ground that the bar was jurisdictional. Now, how did the circuit and supreme courts treat this demurrer? The former sustained it on the ground that the time began with the date of appointment, and dismissed the bill. The latter sustained it with the modification already stated; having made the remark, "this is a statute of limitation, and is precisely like other statutes of limitation," Judge Miller proceeded as follows: "and applies to all judicial contests between the assignees and other persons touching the property or rights of property of the bankrupt, transferable to, or vested in the assignee, where the interests are adverse and have so existed for more than two years from the time when the cause of action accrued for or against the assignee. It is obviously one of the purposes of the bankrupt law that there should be speedy disposition of the bankrupt assets; this is only second in importance to securing equality of distribution. The act is filled with provisions for quick and summary disposal of questions arising in the progress of the case, without regard to usual methods of trial attended with some necessary delay. To prevent this as much as possible, congress has said to the assignee, you shall commence no suit two years after the cause of action has accrued to you, nor shall you be hampered when the cause of action has accrued more than two years against you; within that time the estate ought to be nearly settled up, and your functions discharged;" this policy of the limitation clause, and the

ground of it, as so explained by the court, are utterly incompatible with the idea that the bar is under the control of the parties, not of the court, and is compatible alone with the idea that it is under the control of the court and not of the parties; but, as if to put its view upon the subject beyond doubt the court concluded its explanation of the policy with the further remark, that by the two years clause congress declares, " we close the door to all litigation not commenced before that period has elapsed;" the conclusion is unavoidable, if the door may be closed or opened at the will of the parties, congress does not close it, and the section provides but a remedial limitation; if congress closes it the parties cannot open it, and the section imposes a jurisdictional limitation; therefore the supreme court fully sustained the circuit court, but following the analogy furnished by the practice under a remedial bar of limitations, further held that when it appeared that there had been no laches upon the assignee's part in hearing of the fraud, which was the basis of the action, and the fraud had been concealed, or was of such a character as to conceal itself from him, the statute did not begin to run, till it had been discovered by, or become known to him or his privies, and so reversed with directions to proceed accordingly; thus the supreme court decided that if the concealment of the fraud did not appear in the bill, the bar would begin with the appointment; that if it did so appear the bar would begin with the discovery, and if more than two years had elapsed between the commencement of the bar and the commencement of the suit, a demurrer would lie, and the bar be raised; and upon the invariable distinction between a demurrer and a plea, this was deciding that the second section of the act of 1867 prescribed a jurisdictional limitation. Hence, if we have correctly interpreted *Baily* v. *Glover* the supreme court has adjudicated the question and its adjudication is a rule to us.

We add that the rule, so laid upon us, entirely accords with our preconceptions derived from the statute alone.

We now advert to several cases which have since been decided upon the federal circuit. We refer to them, not that the decisions or opinions of an inferior court can be looked into as impairing or supporting a decision of the supreme court of the United States, but because those circuit cases contain proof that our interpretation of the appellate decision in *Baily* v. *Glover* and others is correct. In *Wiltonberger and Norton, assignees in bankruptcy* v. *Phillips*, 3 *Wood*, 115, it appeared by the petition that the cause of action accrued on the appointment of the assignee, and that the suit was commenced more than two years after the defendant accepted, which under the civil law practice of Louisiana was equivalent to a demurrer at the common law; the circuit court sustained the exception upon *Baily* v. *Glover* as a controlling decision. In 4 Dillon, 386, *Payson, assignee in bankruptcy* v. *Coffin*, the defendant plead that the cause of action did not accrue within two years before the suit was brought, the report does not show that that fact previously appeared upon the record; the plaintiff demurred; the plea was adapted to either of two theories, the theory that the bar was remedial, the theory that it was jurisdictional; and, if the lapse of time between the accruing of the claim and the commencement of the suit did previously appear in the record, the plea, instead of the demurrer, may have been resorted to, for the purpose of securing to the defense whatever of the two constructions the act might receive; the plea was sustained, and on which of these grounds the report does not indicate, but in *Walker, assignee in bankruptcy* v. *Turner*, same volume, at page 165, according to Judge Dillon, Judge Miller, deciding *Payson* v. *Coffin* orally, put his conclusion upon the *Baily and Glover* case and what he regarded as the obvious policy of the two years clause, and the almost necessary result of its peculiar phraseology. Judge Dillon attributes to Judge Miller the use on that occasion of the following expression, namely, that his decision of *Payson* v. *Coffin* was " thoroughly supported by the views of the supreme court

in *Baily* v. *Glover ;* " at first glance it might be said that that language rather referred to a dictum than to a decision, and that Judge Miller would not probably have employed it, had he been referring to an adjudication of the supreme court; and this idea could have especial force, had Judge Miller's expression been this—"supported by the views of the judge who delivered the opinion in *Baily* v. *Glover,*" but, when he said, "supported by the views of the supreme court in *Baily and Glover,*" he must be taken to have studiously based his remark upon this the fixed rule for the interpretation of decisions, namely, that all that binds an appellate court, and therefore.all that can be reported as its views in its opinion delivered by a single member is the conclusion and its reasons, for which two elements the court is alone responsible—all matters of dictum contained in the opinion being merely the view or views of that judge and for which he alone is responsible; therefore correctly understood, Judge Miller treated that case as an adjudication of the supreme court upon the subject, and accordingly sustained the plea in *Taylor and Coffin* on the ground that it presented a jurisdictional bar. In *Walker and Turner* the limitation was pleaded, and the defense thus adapted to the alternative theories of the clause, the plea was demurred to, and was sustained as presenting a jurisdictional bar. In *Foreman, assignee in bankruptcy* v. *Bigelow et als.,* 9 Cent. L. J., 430, at the first circuit, Judge Clifford, on the authority of *Baily* v. *Glover,* sustained a demurrer to a bill in equity upon the ground that two years had elapsed between the accruing of the cause of action and the commencement of the suit. In *Tappan, trustee in bankruptcy* v. *Whittemore et als.,* decided, as we understand, after the 21 of Wallace, on demurrer interposed to the complaint upon the ground that the claim was barred under section 5057 which applies equally to trustees as to assignees, Judge Wallace overruled the demurrer, because the two years had not elapsed; holding that it would have been sustained had the reverse appeared; he followed the

21 of Wall. without alluding to it, and unfairly assumes that he knew of it, when he made his decision. We therefore hold that the district court had no jurisdiction of the present suit. Is the record in a condition to enable us to act upon the defect? From the conclusion already reached, it would seem to be a necessary result that the petition does not state a right of action, unless it affirmatively shows that the suit is brought within the two years, and that not showing it, it is substantially defective; the present petition is thus defective; the third and fourth answers were each demurred to, the demurrers sustained, and judgment rendered upon them against the defendant. Whether these answers were defective or not the demurrer reached back to the petition as containing a substantial defect, and judgment on each demurrer should have been rendered against the assignee; hence the defendants'. exception to the judgment as rendered on the demurrers, was well taken.

Again it affirmatively appears in the record in two instances that the district court had no jurisdiction of the suit. The petition shows that the claim accrued as early as April 11, 1872, certainly not later than August 15, 1872, the official filing of the petition that the suit was commenced on April the 8th, 1876; upon the trial the deed of appointment executed on April 11, 1872, was offered and admitted in evidence and became thus coupled with the filing of the petition; thus the defect of jurisdiction twice appears upon the record. The purpose of the offer was to show that the assignee was competent to sue, and the court to entertain the suit; the effect of the offer was the same; the admission of the deed was objected to as incompetent, and an exception taken; the objection was perfect, and must be sustained.

But the objection was superfluous. Want of jurisdiction over subject-matter is a radical, and therefore an incurable, defect. The parties cannot waive, nor can the court ignore it. A court does not create its jurisdiction; it must accept and confine itself to what is created for it; hence *ex necessi-*

*tate* such defect of jurisdiction carries its objection with it; appearing in the case, it is the imperative duty of the court, of its own motion, to treat the proceedings as null, and to dispose of them accordingly; for this is its only power in the given case. Mr. Gould in his Pleadings thus states the rule: " It is a fatal objection to the jurisdiction of any court, that it has not cognizance of the subject-matter of the suit; i. e., that the nature of the action is such that the court is under no circumstances competent to try it; in such case neither a plea to the jurisdiction nor any other plea would be necessary to oust the jurisdiction of the court; the cause might be dismissed on motion, or even without motion it would be the duty of the court to dismiss it *ex officio;* for the whole proceeding would be *coram non judice* and utterly void." To this we add that the rule is absolutely uniform; and is so plain and familiar, that further citation in its support would be unbecoming. The words of the act, "not maintainable," here recur, for in the light of the above elucidated principle they constitute an express direction to the court to refuse to entertain a suit, so forbidden by the statute. It follows that it was the duty of the district court, on inspection of its record, and of its own motion, to dismiss the suit. It having proceeded to exercise jurisdiction, and render judgment for the assignee, it is our duty to reverse, and we do reverse the judgment and dismiss the action and with costs to the plaintiff in error.

It is due to the learned chief justice, who tried the case below, to say that the suit was tried there on both sides without a hint against, or an apparent doubt of jurisdiction; that the construction now given to the statute is a recent idea; and that it is not remarkable that his attention was diverted from a point, that was not suggested at the bar in a case which was represented by competent counsel, and sharply contested.

Judgment reversed.

BLAIR, J., dissenting.

This case, and the following case, of "*Kent* v. *Upton, assignee*," were reversed in the supreme court of the United States at the October term, 1881.