**HURSH AGENCY, INC., a Wyoming corporation, Appellant (Defendant and Third-Party Plaintiff),**

v.

**WIGWAM HOMES, INC., a Wyoming corporation, Appellee (Plaintiff).**

**No. 5827.**

Supreme Court of Wyoming.

May 19, 1983.

William L. Miller (argued), and Holly B. Brown of Central Wyoming Law Associates, P.C., Riverton, for appellant.

David B. Hooper of David B. Hooper, P.C., Riverton, for appellee.

Before ROONEY, C.J., and RAPER, THOMAS, ROSE and BROWN, JJ.

RAPER, Justice.

As the result of a jury verdict, a judgment for damages was made and entered by the trial judge in favor of Wigwam Homes, Inc. (appellee) against Hursh Agency, Inc. (appellant) in the stipulated sum of $19,169.61 plus interest thereon in the amount of $3,158.46. The damages were awarded because it was found by the jury that appellant, as agreed, failed to provide insurance which would have covered appellee's loss arising when half of a modular house fell into the basement during installation.

The appellant presents as issues:

"1. The trial court erred by instructing the jury as a matter of law that the loss sustained would have been covered by the insurance company had a contract been in force.

"2. The trial court erred in excluding evidence of insurance policy exclusions and changes in specifications and increased hazards of risk.

"3. The trial court erred in not, sua sponte, directing a mistrial when Plaintiff-Appellee's counsel, during cross-examination of Mr. Hursh, asked a leading question, disclosing an offer to settle for a specific sum. The cautionary instruction given was inadequate.

"4. The trial court erred in excluding the testimony of Mr. Strickler, whose testimony was relevant and credible. Said testimony directly impeached the Plaintiff's sworn testimony of the facts concerning attempts to obtain insurance coverage."

We will affirm.

The appellee is in the business of selling modular homes which are installed on foundations on buyers' lots. The appellant is an independent insurance agency.

In November 1979, appellee had acquired an installation floater from appellant to cover the transportation and installation of two modular homes. An installation floater insures against all risks of direct physical loss or damages to the insured property except as its terms otherwise provide. Those installations were completed without loss.

In January 1980, appellee had on its lot two halves of a modular home which it sold to Jack Long for installation on his lot. Long contracted for construction of a foundation with basement. He reported completion to appellee. Appellee employed James Francisco to transport the two halves of the modular home to the Long homesite and install it on Long's foundation.

On Friday, January 11, 1980, Francisco moved the first half of the modular home to the foundation site. Upon arrival he discovered that the foundation had not been constructed to the particular modular home requirements in that it was two feet too long. He immediately so notified James Barquin, president of appellee.

Later on that same day, Barquin and his wife Marguerite, along with Betty O'Donley and her husband, all the shareholders of appellee, met with Francisco to discuss the problem. James Barquin contacted Long, and it was decided that a beam to carry one end of the home be placed in the foundation to correct the error.

Francisco did not have insurance. All parties agreed to hold each other harmless and that appellee get insurance. On Saturday, January 12, 1980, Mrs. Barquin attempted to call someone at appellant insurance agency. She finally called John Hursh, president of appellant, a corporation.

At this point, the trial testimony of Mrs. Barquin and John Hursh is in conflict. Mrs. Barquin testified that John Hursh assured her the insurance would be arranged. Hursh testified that he told Mrs. Barquin nothing could be done over the weekend, and she would have to take the necessary information to the appellant's office on Monday, January 14, 1980 to see if the personnel there could help her. Mrs. Barquin did call the appellant agency office over the noon hour of Tuesday, January 15, 1980, and supplied the necessary information, i.e., descriptive data and identification numbers, etc. No policy with installation floater had been, nor was it thereafter, issued.

Long, in the meantime, had his contractor install the beam decided upon. On Monday, January 14, 1980, Francisco started installation of one-half of the modular house. On Tuesday, January 15, 1980, at about 3:30 p.m. when he lowered it onto the foundation, the beam gave way, and the modular half fell into the basement completely destroying it.

As we move along through the issues, other factual material will be added as required.

## I

The trial judge instructed the jury that as a matter of law:

### "INSTRUCTION NO. 9

"The physical loss and damage which the plaintiff sustained when the half of the modular home fell into the basement is a loss which the insurance company would have been obliged to reimburse, had an insurance contract similar to that of Plaintiff's Exhibit 1 (the November insurance policy) [1] been in force at the time."

1. Following the destruction of the module, the appellant, on March 27, 1980, issued an identi-

Appellant asserts this to be error on the ground that the insured (appellee) must meet its burden of proving that its loss came within coverage extended by a preponderance of the evidence, and any questions concerning the proximate cause of the loss must be resolved by the jury.

We have no argument with the rules set out in the various cases cited by appellant. They are all court tried without a jury. Though findings of fact must be made by a trial judge, when sitting without a jury, the problems are different. *Pacific Indemnity Co. v. Kohlhase,* 9 Ariz.App. 595, 455 P.2d 277, 48 A.L.R.3d 1114 (1969), cited by appellant, pretty well summarized the various burdens in establishing coverage: the insured has the burden of proving that its loss was due to an insured risk; the insurer has the burden of showing that the loss was within a policy exclusion; when the undisputed facts show no coverage exists, the court must direct a verdict for the insurer; when the undisputed facts show that the loss was a covered risk, then only the other facets of the litigation must be disposed of, whether questions of law or fact, by the court and jury respectively; and, when the evidence is conflicting, the question of whether the loss is within the risks of the policy or excepted therefrom is ordinarily for the trier of fact.

In the case now before us there is no dispute as to what caused the loss: a beam gave way, and one-half of the structure was destroyed during installation; therefore, a loss occurred during installation. The court determined as a matter of law that if a policy had been issued, such a loss was a covered risk.[2] There was no dispute in the evidence that the foundation was too long

and it was necessary to install a beam on the foundation to accommodate the shorter module. There was no credible evidence that such a corrective method was not acceptable and would justify refusal to issue or cancellation of the policy, if issued. The court, in the face of such undisputed facts, found that the installation of the beam was not within the policy exclusions.[3] We will discuss the exclusion matter a bit further in Part II since that is encompassed by appellant's separate issue 2.

██ As we view it, the trial judge, by the questioned instruction, merely instructed the jury on a question of contract construction. A policy of insurance is a contract between the insurer and the insured and construed in the same way.[4] *Worthington v. State,* Wyo., 598 P.2d 796 (1979); *State Farm Mutual Automobile Insurance Co. v. Farmer's Insurance Group,* Wyo., 569 P.2d 1260 (1977). When terms of a contract are shown without any conflict of evidence, interpretation of a contract becomes a question of law for the court. *Engle v. First National Bank of Chugwater,* Wyo., 590 P.2d 826 (1979). Paraphrased, and as said approvingly from a quote in *Horvath v. Sheridan-Wyoming Coal Co.,* 58 Wyo. 211, 131 P.2d 315 (1942), the interpretation of a written contract is a question of law for the court; but where the terms of a contract are conflicting or doubtful, it is for the jury to ascertain the intention of the parties and determine what the contract was under proper instructions. The interpretation and construction of a contract are done by the court as a matter of law. *Amoco Production Co. v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463 (1980). See also, *Goodman v. Kelly,* Wyo., 390 P.2d 244 (1964).

---

cal installation floater to cover the replacement for the period of January 17, 1980 to February 1, 1980. It was installed on an identical beam without incident.

2. Appellant agreed; his evidence in describing the policy during the course of the trial was that the policy, if issued, would cover all risks except those excluded.

3. Appellant relies on the following exclusion clause: "4. This Endorsement [Installation Floater] Does Not Insure Against: * * * Loss,

damage or expense caused by or resulting from error, omission or deficiency in design, specifications, workmanship or materials * * *."

4. There are some exceptions to construction not applicable here, for example, when there are ambiguities or uncertainties in the language used in a policy, they must be construed strictly against the insurer who drafted the contract. *Wilson v. Hawkeye Casualty Co.,* 67 Wyo. 141, 215 P.2d 867, 874–875 (1950).

■ Since it was the duty of the trial judge to interpret the contract of insurance and not that of the jury, his interpretation must be conveyed to the jury. It is the function of instructions to give the jury guidance in reference to the law of the case to assist it in arriving at correct conclusions. *Gale v. Kay,* Wyo., 390 P.2d 596 (1964); *MacManus v. Getter Trucking Co.,* Wyo., 384 P.2d 974 (1963). The submission of a legal proposition to a jury would necessarily be reversible error. *Chosen Friends Home Loan & Savings League v. Otterson,* 7 Wyo. 89, 50 P. 194 (1897).

■ It was not error for the trial judge to give to the jury the benefit of his construction of the insurance contract under circumstances where there was no dispute as to the nature of the loss. The language of insurance policies at best is not always easy for the layman to understand. The policy pertinent to the circumstances of this case devotes itself for the most part to conditions and exclusions and never does specify what particular risks are covered. The jury was entitled to know wherein it covered appellee's loss, even if issued.

The controlling question in this appeal is whether appellant had committed itself to procure installation insurance through an installation floater covering the loss for appellee—did appellant enter into an oral contract to furnish insurance such as it had sold to appellee previously? That query was fully presented to the jury as an issue of fact to be decided by the jury, which is its function. *Jim's Water Service, Inc. v. Alinen,* Wyo., 608 P.2d 667 (1980). There was a sharp conflict in the testimony. We have so often held that the supreme court assumes evidence in favor of the successful party to be true, leaving out entirely the evidence in conflict therewith, and assigns every favorable inference to evidence of the successful party that can be reasonably drawn from it. *Crown Cork & Seal Co., Inc. v. Admiral Beverage Corp.,* Wyo., 638 P.2d 1272 (1982); *Distad v. Cubin,* Wyo., 633 P.2d 167 (1981); *Western National Bank of Lovell v. Moncur,* Wyo., 624 P.2d 765 (1981).

■ The law is clear that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance for another and through fault or neglect fails to do so, will be held liable for any damage resulting. His liability arises under the concept that he is agent for the insured in negotiating for a policy and owes a duty to his principal to exercise reasonable skill, care and diligence in causing the issuance of a policy. His liability may arise either for breach of contract or negligent default in the performance of a duty imposed by contract, at the election of his client. 43 Am.Jur.2d Insurance § 139, pp. 221–222; Annot., Liability of Insurance Broker or Agent to Insured for Failure to Procure Insurance, 64 A.L.R.3d 398 §§ 2 and 3 in particular; 3 Anderson, Couch on Insurance 2d §§ 25:46, 25:47, 25:57–25:60; *Arceneaux v. Bellow,* La.App., 395 So.2d 414 (1981), cert. denied 400 So.2d 669; *Sloan v. Wells,* 296 N.C. 570, 251 S.E.2d 449 (1979); *Keller Lorenz Co., Inc. v. Insurance Associates Corp.,* 98 Idaho 678, 570 P.2d 1366 (1977); *Insurance Management of Washington, Inc. v. Eno & Howard Plumbing Corp.,* D.C.App., 348 A.2d 310 (1975). This rule was incorporated into an instruction to the jury.

John Hursh is president of appellant, a corporation. He is a lawyer but not a licensed insurance agent or broker, though he owns a substantial interest in the stock of the corporation. The corporation is in the business of selling insurance and real estate for profit. The corporation employs a licensed insurance agent to handle the insurance business. The testimony of Mr. Hursh was that when he receives telephone calls or is otherwise contacted about insurance, he refers the inquirer to the Hursh Agency and handles no insurance business himself. At the time of the call from Mrs. Barquin on a Saturday, he testified that he followed that practice and advised her to go into the office on Monday and give the information to someone there. At the time the agency was undergoing reorganization. The new licensed insurance agent was hired but temporarily was only available on call by a

secretary in the office. There is evidence that Mr. Hursh did leave or caused to be left a note on a desk in the insurance office that had information supplied to him by Mrs. Barquin, but apparently was not noticed by anyone in the office. When Mrs. Barquin called the agency on Tuesday morning, the secretary on duty knew nothing about an installation floater.

Mrs. Barquin's testimony about her contact with Mr. Hursh was:

"Q. What did you do after that?

"A. I said, I knew John, maybe I could call him and give him the information and he could take it into the office, which is what I did.

"Q. Now by John, you're referring to John Hursh?

"A. Yes.

"Q. Okay, now tell us as precisely as you can what took place?

"A. I called John at home and I told him that we'll be moving a house on Monday morning and we have forgotten to get the insurances and we are leaving town and would not be back and I presumed they were going to move it early Monday morning because they usually move them early in the morning. So I gave him the amount that we wanted the house insured for and insure ourselves too, we are getting one of these modular homes and we might as well insure ourselves at the same time. Insure both homes for the same amount of money. Betty went in her bedroom, into her file cabinet, and got the forms and gave me the serial numbers which I passed on to John on the telephone.

"Q. All right. Now what amount of coverage did you request on each of these homes?

"A. I asked $35,000 on each of these homes.

"Q. What, if any, was the response of Mr. Hursh?

"A. He said he would take it into the office on Monday morning. Not to worry, that it would be taken care of, that it would be taken into his office Monday morning. We left.

"Q. That was the end of the conversation?

"A. That was the end of the conversation.

"Q. Did you have any knowledge as to whether he was taking any notes with respect to this information?

"A. Well, I presumed he was. I give him the serial numbers off of both houses. I just presumed. He later told me he wrote it on the margin of a newspaper.

"Q. And did you tell him what type of insurance you were wanting?

"A. Installation floater like we had requested for the other two houses.

"Q. Other than the conversation wherein Mr. Heckart apparently advised Betty O'Donley that Marian Asbell was now in charge of the Hursh Agency insurance, did you have knowledge of anybody else that might be involved with Hursh Agency?

"A. Yes, I think he also said that Sheila McMillen was working as a secretary there.

"Q. Was any attempt made with respect to contacting her?

"A. I don't think so at that time. Now, I am not really sure, but I knew she wasn't the agent.

"Q. You did nothing further with respect to obtaining insurance after this telephone call with Mr. Hursh?

"A. No, I left town."

The other evidence was that the appellant had sold installation coverage on similar modular home installations in the November preceding. Not only that, but the appellant sold a similar policy for installation of the replacement module for the half destroyed by falling into the basement.

The difficulties in obtaining the insurance installation floater were explained by a former insurance agent employed by appellant. He testified that, since the agency had no authority to issue a policy without permission of the issuing insurance company, sometimes it took only a few

hours to obtain a binder [5] from the insurance underwriter but ordinarily it could be procured within 24 hours.

Disregarding, then, any evidence of the appellant to the contrary, there is a reasonable inference that John Hursh, as an agent of the appellant, on Saturday entered into an oral contract in anticipation of a premium to procure the insurance coverage. Through negligence or otherwise, the policy was not bound, though on Monday a binder could have been acquired to be in effect on Tuesday morning in order to cover the loss Tuesday afternoon. The jury, as the sole judge of the credibility of the witnesses, was not required to accept Mr. Hursh's version of the facts. *Kahler v. Martin,* Wyo., 570 P.2d 720 (1977). It clearly did not do so.

The case was submitted to the jury on both contract and negligence theories. The jury found a breach of contract and negligence by the appellant and apportioned the negligence 67% to appellant and 33% to appellee. As an alternative, appellant urges that the judgment should be for 67% of the loss. The claim is without merit in that the appellee has elected to recover on contract which it may do under the rule of liability heretofore stated.

## II

Appellant asserts that the court erred in excluding evidence of insurance policy exclusions and changes in specifications and increased hazards of risk. The policy provisions were a matter of law for the court, and, under the undisputed evidence as to the nature of the loss, this was included in instruction number 9. The undisputed evidence is also that in spite of knowledge of the destruction of the module when the beam collapsed, the appellant went ahead and, without question, obtained authority to and did issue an installation floater on the replacement module. It will be recalled that the evidence was that

placement of a beam was a common, accepted practice. Appellant presented no evidence to the contrary.

Furthermore, the questions posed by Mr. Hursh were questions which asked his opinion as a lawyer as to the meaning of various provisions of the insurance policy and their application to the facts. That intruded upon the function of the trial judge as the arbiter of the law of the case and the jury as the fact finder. Further, as noted by the trial judge, even if Mr. Hursh could be considered an expert, he was not qualified as such nor were there any facts in evidence upon which an exclusion could be based. There are no specifications of any sort in the record. The policies in evidence do not even include the length and width of the modular home covered.

## III

It is the position of appellant that the trial judge erred in not, sua sponte, directing a mistrial when plaintiff-appellee's counsel, during cross-examination of Mr. Hursh, asked a leading question disclosing an offer to settle for a specific sum and that the trial judge's "cautionary" (corrective) instruction was inadequate. The circumstances of the testimony of Mr. Hursh in that regard depict a legally inartistic but colorful picture that is most interesting. We disagree that there was error.

On cross-examination, counsel for appellee, without objection from appellant's counsel, asked and Mr. Hursh answered:

"Q. Isn't it a fact that you authorized communication with respect to payment of the plaintiff's claim in an amount of at least five thousand?

"A. You mean in order to settle this case?

"Q. Yes.

"A. Well, we have dickered back and forth with you on settlement of this matter from the very beginning, and we have

---

5. A binder is an insurer's bare acknowledgement of its contract to protect the insured against casualty until a formal policy can be issued. The binder may be oral or written. No specific form is required nor does it have to set forth all the terms of the insurance contract. *Sloan v. Wells,* supra.

made an attempt to try to get around the jury trial here and you refused.

"Q. That's right, it wasn't a question of you just deciding you were going to go to the jury; was it?

"A. No, I think if the people can try to get it done at a minimal cost, you should try."

On redirect examination appellant's counsel asked, appellee's counsel objected, and the trial judge instructed:

"BY MR. MILLER:

"Q. Mr. Hursh, Mr. Hooper asked you have you ever made an offer to Wigwam Homes in an attempt to resolve this matter for less than what they are claiming in this lawsuit?

"MR. HOOPER: I object to this question. It's improper, irrelevant, and immaterial.[!]

"THE COURT: I am going to permit him to answer and I will give the jury at the end of the trial a formal instruction in this regard: [6] It was highly improper for Mr. Hooper to have interrogated Mr. Hursh about offers of settlement. This question also is improper, but as much as Mr. Hooper asked the question and Mr. Hursh was compeled [sic] to answer, there being no objection, the Court does not interject itself to rule upon it. I am going to permit him to answer this question, but I am going to instruct you that it's the policy of the law to always encourage people who are involved in litigation to use their best means and their best conscience and best efforts to settle, even if necessary to do so, they are required to compromise their position or compromise their entitlements by reason that it is the policy of the law, it's also the law well stated and published and all these lawyers know about it, that conversations and offers which are made in negotiations in an attempt to settle a dispute are never admitted at a trail [sic] or never given to the jury. And one of

the reasons that I will instruct you to disregard this testimony is because the law does expect that in the course of those negotiations parties will compromise their position, that they will forego very valid claims and that they will settle for less than they are entitled to; and therefore you as a jury gain no information from an offer of settlement which would be of any assistance to you in resolving the facts of the case. If a party compromises his position in order to get it settled that might confuse you but the offer certainly is no suggestion that the person is not entitled to more or not entitled to less.

"Go ahead and answer the question, Mr. Hursh, and that will end that topic.

"MR. MILLER: Your Honor, I will withdraw the question. And that's all I have.

"THE COURT: Very well, you are excused, Mr. Hursh."

The appellant's counsel did not move for a mistrial or make any objection at that time. An instruction given without objection becomes the law of the case. *Matter of Estate of Mora,* Wyo., 611 P.2d 842 (1980); *Cox v. Vernieuw,* Wyo., 604 P.2d 1353 (1980); *Pure Gas and Chemical Co. v. Cook,* Wyo., 526 P.2d 986 (1974). See also, Rule 51, W.R.C.P. discussed in Part IV requiring that objections be made before the jury retires.

An instruction may be given at any time before or during the taking of evidence. Rule 51, W.R.C.P. However, the same rule provides that such an instruction shall be reduced to writing, numbered, and delivered to the jury with the other instructions. We have not dealt with a failure to separately send such an instruction to the jury in a civil case, but we have in a criminal case. *Hoskins v. State,* Wyo., 552 P.2d 342 (1976), cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Requirements in the trial of criminal cases are usually considered more strictly. Rule 31, W.R. Cr.P., adopts by reference Rule 51, W.R.

---

6. The court did not further instruct the jury on the offer of settlement at the close of the evidence. It either apparently considered this corrective instruction sufficient or forgot. No one objected that it was not reduced to a numbered instruction for inclusion with the instruction package.

C.P., so the same rule appears in both types. In Hoskins it was held that the giving of oral instructions, even if contrary to a rule or statute, is not reversible error if proper and does not injure a party, especially when taken down by the court reporter for the record. The purpose of reducing to writing is to give a party the exact language so that he may appropriately object, but failure to do so may not be made a weapon of error. *State v. Carroll,* 52 Wyo. 29, 69 P.2d 542 (1937), cited in *Hoskins.*

It was in this instance error for testimony of settlement negotiations to ever creep into the evidence. Rule 408, W.R.E.[7] We are unable to discern from the record just what purpose there was in appellee's counsel opening up the subject, if it was not to obliquely plant in the jury's mind that here was an admission of liability in that $5,000 was a substantial offer. It is argued that the purpose of the testimony from appellee's point of view was impeachment. On the other hand, what did appellant's counsel have in mind by not objecting when the question was first asked? He must have felt that it demonstrated a generous, reasonable man and even wanted to expand upon it by going into the matter in greater depth, perhaps to show the invalidity of the claim. Either of the motives of counsel left the admission of such evidence within the discretion of the court. Rule 403, W.R.E.[8] While the purposes for which such testimony can be admitted perhaps are not exclusive, such testimony does not fit within the listed exceptions to prove bias or prejudice, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution (buying off the prosecution or a prosecution witness).

■ We are satisfied that the trial judge exercised his discretion in excluding the evidence and giving a corrective instruction which effectively told the jury to disregard the evidence, even though appellant's counsel was offered the opportunity to proceed in that appellee opened the door, but appellant's counsel withdrew his question as futile after the trial judge had, in effect, advised the jury that the evidence was irrelevant. Determination of the relevancy[9] of evidence rests largely within the discretion of the trial court. *Canyon View Ranch v. Basin Electric Power Corp.,* Wyo., 628 P.2d 530 (1981), and cases therein cited. The advisory committee's (federal) note to Rule 408, also observes that the evidence of an offer to compromise is irrelevant since it may be motivated by a desire for peace, rather than any concession of weakness. The most important purpose of the rule, however, and that mentioned by the trial judge in his instruction, is the promotion of dispute settlement.

■ We must assume that the jury followed the court's corrective instruction that the evidence of settlement negotiations was irrelevant. *Barnette v. Doyle,* Wyo., 622 P.2d 1349, 1365 (1981); *Madrid v. State,* Wyo., 592 P.2d 709, 711 (1979). The court's corrective instruction cured whatever error occurred by the improper questioning and answer that slipped into the record. *Elite*

7. Rule 408, W.R.E. provides:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

8. Rule 403, W.R.E. provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

9. Rule 401, W.R.E. provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*Cleaners and Tailors, Inc. v. Gentry,* Wyo., 510 P.2d 784 (1973).

## IV

As a final issue, appellant claims that the trial judge erred in excluding the testimony of Mr. Strickler in that it was relevant and credible. In order to meet this question, it is necessary to relate some of the background.

The appellee's witnesses, Mr. and Mrs. Barquin and Mrs. O'Donley, testified that after Mrs. Barquin talked to Mr. Hursh on Saturday, no further effort was made to obtain insurance. Mr. Hursh, to counteract that, testified that he had, on the morning of the trial, received a telephone call from Robert Strickler, an agent for the Allstate Insurance Company, to the effect that he had been contacted after appellant. The trial judge overruled an objection that the conversation between Mr. Strickler and Mr. Hursh was hearsay subject to further foundation and connection. Counsel for appellant did not pursue the matter any further at that point. On cross-examination by appellee's counsel, Mr. Hursh went into more detail about the contact between Mr. Strickler and him. Mr. Hursh, in response to questioning, also advised that Mr. Strickler was available as a witness.

Out of the hearing of the jury the trial judge expressed great concern about the representations of Mr. Hursh as to various phases of his testimony which the trial judge at that point deemed incompetent. The next morning appellant's counsel advised the court that Mr. Strickler was available to testify and orally outlined what his testimony would be. Appellee's counsel objected on the ground that the offered witness was not listed on the pretrial order and further that he had also talked with the witness and the time of an inquiry about the insurance was not very definite nor could Mr. Strickler identify who from appellee had called.

In the light of the conflict as to just what Mr. Strickler's testimony would be, the trial judge determined that he would receive an offer of proof by first hearing his testimony without the jury present, as authorized by Rule 103, W.R.E.[10] That course was pursued.

On examination Mr. Strickler testified how he was in the neighborhood and had observed the house that had fallen into a basement. He recalled having a telephone call from Wigwam a day or so before but could not exactly identify just who it was that called; but he thought he was a salesman for Wigwam. It seemed to him to be someone by the name of "Buck." He recalled that the caller wanted insurance to move the modular home from Wigwam to "Riverview Road" (the location where the mishap occurred). The trial judge decided that the testimony of Mr. Strickler was too indefinite to have probative value and was, in fact, speculative. But that is not the end of the saga.

Later on, the day of the Strickler offer of proof, there appears in the record transcript a conference telephone call. Mr. Strickler had apparently telephoned the court that he

---

10. Rule 103, W.R.E. provides in pertinent part:

"(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) Objection.—In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

"(2) Offer of Proof.—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

"(b) *Record of offer and ruling.*—The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. *It may direct the making of an offer in question and answer form.*

"(c) *Hearing of jury.*—In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." (Emphasis added.)

now remembered who from appellant had talked to him. The trial judge at once got counsel for appellant and appellee on the line to hear what Mr. Strickler had to say. It turned out to be a man who had worked for appellant some two years before the occurrence who had contacted him about automobile insurance. Neither counsel had a question for Mr. Strickler. No objection was made by appellant's counsel.

Upon reconvening court, the trial judge thereupon gave the following instruction to the jury:

"THE COURT: The Court observes that all members of the jury are present, counsel and the parties are present.

"To digress a minute, ladies and gentlemen of the jury: Over the plaintiff's objections yesterday afternoon, Mr. Hursh was permitted to testify regarding factors which the defendant considered in denying the plaintiff's claim in January of 1980. He testified in part as follows: 'We became aware of the fact on Monday after Marguerite had called me and I told her that nothing could be done on the weekend, that Wigwam had called another insurance agent in Riverton to attempt to get insurance for this very house.'

"A few questions later, he testified the agent's name was Bob Strickler from Allstate and he so advised me of that fact. Mr. Strickler's testimony was heard by the Court this morning, out of the presence of the jury.

"The Court finds as a matter of law that there is no sufficient foundation for Mr. Hursh's statement in that regard. There is no competent evidence that the plaintiff sought to get insurance from any other agency on or between Saturday, January 12, or the following Tuesday, January 15th. The testimony by Mr. Hursh in that regard should not have been given. The jury, therefore is instructed to entirely disregard that statement and to make or draw no inference or conclusions from it whatsoever."

No objection to the instruction was made at that time nor at any time thereafter including the time the jury was out, returned and reported its verdict, and was discharged. Following entry of judgment, appellant moved for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Rule 50(b), W.R.C.P. It was denied. Included was an objection to the foregoing instruction.

Rule 51, W.R.C.P. provides in pertinent part:

"At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary and same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires. *No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict,* stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make any such objection out of the hearing of the jury. All instructions offered by the parties, or given by the court, shall be filed with the clerk and, with the endorsements thereon indicating the action of the court, shall be a part of the record of the cause." (Emphasis added.)

Appellant's objection to the instruction was, therefore, untimely. The instruction became the law of the case. We can say the same about this instruction as the one about settlement negotiations previously given to the jury and covered in Part III of this opinion.

■ With respect to the testimony of Mr. Strickler, which was excluded by the court, it was clearly not competent to the appellant's case and actually would have been only an aid to appellee's position in that it would have impeached the testimony of Mr. Hursh. It was not relevant to the position of appellant. It had no probative value. Rule 401, W.R.E., supra fn. 9.

The trial judge in this case, through his alertness and initiative, successfully made the trial error free and rescued it from any requirement for a new trial.

Affirmed.