**F I L E D**

**UNITED STATES COURT OF APPEALS**

**February 2, 2006**

**TENTH CIRCUIT**

BRUCE R. ELWORTHY, and
ANNE B. MARSHALL,

        Plaintiffs - Appellants,

        v.

HAWKEYE-SECURITY INSURANCE
COMPANY, an Iowa insurance
company, also known as Homeland
Central Insurance Company, also known
as CGU Hawkeye Insurance Company;
EMPLOYERS FIRE INSURANCE
COMPANY, also known as CGU
Insurance Company, a Massachusetts
insurance company; ONE BEACON
INSURANCE, a Massachusetts insurance
company,

        Defendants - Appellees.

No. 05-8009
(D. Ct. No. 04-CV-71-CAB)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **ANDERSON**, and **KELLY**, Circuit Judges.

Plaintiffs-Appellants Bruce R. Elworthy and Anne B. Marshall (collectively

"the Elworthys") are married and own a home in Sheridan, Wyoming.  The

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Elworthys filed a diversity action in the District of Wyoming, *see* 28 U.S.C. § 1332, against Defendants-Appellees Hawkeye-Security Insurance Company, Employers Fire Insurance Company, CGU Insurance Companies, and OneBeacon Insurance Group LLC (collectively, "CGU")[1] for breach of insurance contract and other related claims. The Elworthys appeal from the District Court's order granting CGU's motion for summary judgment. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In 1998, the Elworthys were sued in Wyoming state court by Cosner Construction Company. The lawsuit (hereinafter "the Cosner suit") asserted breach of contract and unjust enrichment based on the Elworthys' failure to pay $132,136.32 for remodeling services and materials provided by Cosner. The Elworthys filed an answer to Cosner's complaint that included counterclaims against Cosner and third-party claims against others for construction defects, breaches of contract and warranties, and fraudulent billings, related to the installation of hardwood and marble floors in the Elworthys' home as part of Cosner's remodeling job. Cosner responded by amending its complaint to include

---

[1] The Defendants-Appellees are various affiliated insurance companies. Employers Fire Insurance Company originally issued to the Elworthys the policies in dispute. The company was subsequently acquired by CGU. CGU has assigned Hawkeye-Security Insurance Company as the regional insurance company to manage, administer and process claims under any polices of insurance issued by affiliated companies.

federal RICO claims against the Elworthys, alleging that the Elworthys had "engaged in acts or threats chargeable as extortion."

The Elworthys contacted their insurance provider, CGU, and asked that it undertake their defense. Reserving the right to challenge whether it was liable for indemnifying the Elworthys for any of the claims asserted, CGU agreed to defend them. All parties became actively involved in settlement negotiations.

On March 10, 2000, the parties negotiated a proposed "global settlement," which, if agreed upon, would have resolved all claims by all parties. Under the proposed agreement, Cosner and the Elworthys would each receive $100,000 in return for the release of all claims. CGU would have been responsible to pay all the money owed to Cosner, in addition to $47,500 of the money owed to the Elworthys; the balance was to be paid by other insurance companies involved in the suit. The negotiations on March 10, however, failed to produce a final agreement.

Subsequently, CGU approached Cosner in an effort to reach a settlement of the claims against the Elworthys. On March 13, Cosner's attorney informed CGU that Cosner would agree to a global settlement for $100,000 or, if the Elworthys' counterclaims were not simultaneously resolved, it would agree to settle for $120,000. Cosner's lawyer explained that the additional money would be needed to help cover Cosner's costs associated with the continuing litigation. On March 14, Cosner and CGU agreed to a settlement that required Cosner to withdraw all

of its claims against the Elworthys in return for $120,000. The settlement agreement explicitly provided, however, that it would not affect the Elworthys' right to pursue any of their remaining claims. The Elworthys did not approve this agreement.[2]

In the meantime, the Elworthys filed a first-party claim with CGU seeking payment for the same damages to the floors they alleged to be caused by Cosner, as well as additional damages to Oriental rugs stemming from the remodeling. CGU paid the Elworthys for the damages caused to their rugs, but it denied payment for damages to their floors, citing a policy exclusion.

The Elworthys then filed this suit against CGU, alleging breach of contract and breach of the implied covenant of good faith and fair dealing related to both CGU's settlement of their claims with Cosner and in its refusal to pay for losses caused by damages to their floors. The District Court granted summary judgment in favor of CGU on all claims. This appeal followed.

## II. DISCUSSION

A.    <u>Standard of Review</u>

We review a district court's decision granting summary judgment de novo. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is proper when there is no

---

[2]The Elworthys' remaining claims against Cosner and the third parties for the damaged floors were later dismissed as part of discovery sanctions issued against the Elworthys.

- 4 -

genuine issue of material fact to be resolved by the trier of fact. Fed. R. Civ. P. 56(c). Wyoming law applies in this case. *See Shell Rocky Mountain Prod., LLC v. Ultra Resources, Inc.,* 415 F.3d 1158, 1165 (10th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

B.     Settlement of the Cosner Claims

On appeal, the Elworthys do not dispute that CGU had a right under the terms of the contract to enter into a settlement with Cosner to dispose of the claims against them.[3] Rather, they argue that in settling the claims, CGU damaged their ability to recover on their counterclaims against Cosner and thus violated the duty of good faith and fair dealing. More specifically, they argue that CGU (1) deprived them of $100,000 they would have received under the proposed global settlement agreement;[4] (2) assisted Cosner in its defense of the Elworthys' affirmative claims by paying it $20,000 more than it would have received under the proposed global settlement; and (3) breached its voluntarily assumed duty to represent the Elworthys in their affirmative claims against

---

[3]The policy provides that CGU "may investigate and settle any claim or suit that we decide is appropriate." Although the Elworthys list as one of the issues presented for review as whether the insurance contract gave CGU the unfettered right to settle the claims, they do not argue further that CGU breached any explicit terms of the contract.

[4]We note, as did the District Court, that the Elworthys were not entitled to receive $100,000 from an unexecuted settlement agreement. When the global settlement negotiations failed, the Elworthys were entitled to pursue their claims in court, which they failed to do.

Cosner.

Wyoming recognizes a contract-based cause of action for breach of the implied covenant of good faith and fair dealing. *Scherer Constr., LLC v. Hedquist Const.*, 18 P.3d 645, 652–53 (Wyo. 2001); *see also Squillance v. Wyo. State Employees' and Officials' Group Ins. Bd.*, 933 P.2d 488, 491 (Wyo. 1997) (stating that general principles of contract interpretation apply to insurance policies). This implied covenant requires that "neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement." *Scherer Constr.*, 18 P.3d at 653. "Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party." *Id.* "The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between the conduct of the parties." *Id.* (emphasis and quotation omitted).

The obligation to act in good faith is not a limitless one. The covenant of good faith and fair dealing does not "establish new, independent rights or duties not agreed upon by the parties." *Id.* Whether a party has breached this duty "is a factual inquiry that focuses on the contract and what the parties agreed to." *Id.* at 654. Though a factual inquiry, summary judgment may be appropriate if "the party's actions alleged as the basis for the breach . . . were in conformity with the clear language of the contract." *Id.* at 654 n.2. "If the action complained of is

- 6 -

clear and within the intention of the parties as expressed within the unambiguous language of the contract, then summary judgment is appropriate." *Id.*

Applying these standards, we conclude that there is no genuine factual dispute as to whether CGU breached the implied covenant of good faith and fair dealing. The contract language provided that CGU could settle any claim it deemed appropriate.[5] It did not place an affirmative duty on CGU to negotiate a global settlement for claims brought by the Elworthys against CGU; it did not place an affirmative duty on CGU to represent the Elworthys in their affirmative claims against CGU;[6] nor did it place an affirmative duty on CGU to seek the Elworthys' consent before settling the claims against them. *See Whitlock Constr., Inc. v. South Big Horn County Water Supply Joint Powers Bd.*, 41 P.3d 1261, 1267–68 (Wyo. 2002) (finding no breach when defendant acted in accordance with the contract terms). If the parties intended that CGU represent the Elworthys' interests in any related counterclaim they may have had, they were

_____

[5]In fact, had CGU unreasonably failed to settle the claims against the Elworthys, it could have been liable in tort for denying a compensable claim in bad faith. *See Ahrenholtz v. Time Ins. Co.,* 968 P.2d 946, 950–51 (Wyo. 1998).

[6]The Elworthys claim that though the contract did not provide that CGU represent them in pursing their counterclaims against Cosner, CGU assumed a contractual duty to do so because the Elworthys' claims were inextricably intertwined with Cosner's claims. The Elworthys provide no relevant authority for the notion that an insurer can assume a contractual duty to represent an insured in pursuit of counterclaims. Indeed, there is authority to the contrary. *See Suchta v. Robinett*, 596 P.2d 1380, 1384 (Wyo. 1979). As such, we find that this argument is without merit.

required to state expressly that intention in the contract itself. *See id.*; *see also Suchta v. Robinett*, 596 P.2d 1380, 1384 (Wyo. 1979) (holding that an insurer owes no duty—in either contract or tort—to advise or represent the insured on counterclaims that survive a settlement agreement); *Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 517 (Wyo. 2000) (holding that absent language in the policy to the contrary, an insurer has no obligation to assume expense of prosecuting counterclaims). We cannot infer "that such a duty existed absent clear language in the contract indicating that was the parties' intent." *Whitlock Constr.*, 41 P.3d at 1268 .

Moreover, the settlement did not affect the Elworthys' ability to recover on their counterclaims against Cosner. The settlement agreement expressly provided that the dismissal of Cosner's claims against the Elworthys "should not be construed as hindering the right of [the Elworthys] to pursue all of their claims against any and all parties in this Lawsuit." Nonetheless, the Elworthys argue that the attorneys retained by CGU withdrew from the case immediately prior to trial which rendered the Elworthys unable to prosecute their counterclaims. The record reveals, however, that the Elworthys' personal attorney was involved in the underlying case at all times and that the Elworthys could have retained the same attorneys that CGU hired to represent them for their defense. *See Shoshone First Bank*, 2 P.3d at 517 (Wyo. 2000) (insurer has no obligation to assume expense of prosecuting counterclaims). In addition, the fact that Elworthys' claims were

dismissed as a sanction for failing to comply with discovery orders appears to be solely due to the Elworthys' conduct. In sum, CGU acted in accordance with the clear language of the contract, and in so doing did not impinge on the Elworthys' right to prosecute their counterclaims against Cosner. In other words, CGU in no way injured the Elworthys' right to receive the benefit of their agreement. *See Scherer Constr.*, 18 P.3d at 653. Accordingly, the District Court appropriately granted summary judgment to CGU on this issue. *See Whitlock Constr.*, 41 P.3d at 1267.

C.     First-Party Claims for Damage to Floors

The Elworthys next raise claims regarding CGU's refusal to pay policy benefits for damage to the floors in their home. Although their brief is not entirely clear on the matter, they seem to argue both that the failure to pay was a breach of the contract and that the failure to pay was done in bad faith. We will address the breach of contract claim first.

Generally, "the insured has the burden of proving that its loss was due to an insured risk[] [and] the insurer has the burden of showing that the loss was within a policy exclusion." *Hursh Agency, Inc. v. Wigwam Homes, Inc.*, 664 P.2d 27, 31 (Wyo. 1983). "When the evidence is conflicting, the question of whether the loss is within the risks of the policy or excepted therefrom is ordinarily for the trier of fact." *Id.*

In this case, there is no conflicting evidence on whether the damage to the

floors was excluded from coverage. The policy excluded from coverage damages caused by "faulty, inadequate or defective: (1) . . . (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, . . .(3) Materials used in repair, construction, renovation or remodeling." Mr. Elworthy admitted in an affidavit that the damages were due to Cosner's use of improper materials in remodeling the home. Although he later filed an affidavit contradicting those earlier statements, the District Court was correct to disregard it. *See Burns v. Bd. of County Comm'rs of Jackson County,* 330 F.3d 1275, 1281–82 (10th Cir. 2003) ("We will disregard a contrary affidavit . . . when it constitutes an attempt to create a sham fact issue.") (quotation marks omitted)). Therefore, although this issue ordinarily presents a question of fact for the jury, summary judgment is appropriate in this case because there is no genuine dispute of material fact.

Finally, the Elworthys argue that CGU's failure to pay for the damage to the floors was done in bad faith. *See Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1058 (Wyo. 2002) (recognizing a cause of action against an insurer for failure to pay a claim in bad faith). "To establish a claim for . . . bad faith, a plaintiff must establish (1) the absence of any reasonable basis for denying the claim, and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* Because the policy did not cover the Elworthy's loss, CGU's denial of the claims was clearly legitimate. Thus, the Elworthys have no bad faith claim against CGU.

## III. CONCLUSION

Because the record demonstrates the    absence of any genuine issues of

material fact, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge