In the Matter of the ESTATE of Tommy Max MORA, Jr., Deceased.

Irene MORA, Administratrix of the Estate of Tommy Max Mora, Jr., Deceased, Appellant (Plaintiff),

v.

HUSKY OIL COMPANY, a Delaware Corporation authorized to do business in Wyoming; Darrell Kruljac and Frank Shubert, as Individuals and as partners, d/b/a Husky Car-Truck Stop, Appellees (Defendants).

No. 5090.

Supreme Court of Wyoming.

May 27, 1980.

844

Blair J. Trautwein of Hathaway, Speight & Kunz, Cheyenne, for appellant.

James W. Owens of Murane & Bostwick, Casper, for appellee Husky Oil Co.

W. W. Reeves of Vlastos & Reeves, P. C., Casper, and J. N. Murdock (argued) of Vlastos & Reeves, P. C., Casper, for appellees Darrell Kruljac and Frank Shubert.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-plaintiff (hereinafter Mora) brought a wrongful-death action against appellees-defendants premised on their alleged negligence in causing a fire at Husky Car-Truck Stop west of Rock Springs, in which fire Tommy Max Mora, Jr. (hereinafter Tommy) died. At the time, appellees-defendants Darrell Kruljac and Frank Shubert (hereinafter Darrell and Frank) were lessees of the service portion of the car-truck stop, and appellee-defendant Husky Oil Company (hereinafter Husky) was lessor of it. The fire was a gasoline fire, and it occurred in a mezzanine storage room of the building at a time when Tommy was the only occupant of the room.

In addition to leasing the service portion of the Husky Car-Truck Stop building to Darrell and Frank, Husky leased the cafe portion of it to a third party. The mezzanine was appurtenant to the bay area of the service portion, and it was over the cafe portion. The mezzanine was reached by stairs from the bay area. To prevent diesel smoke fallout from accumulating on the items stored on the mezzanine, Darrell and Frank enclosed a 12′ × 16′ room on the mezzanine with sheetrock. Within the room area was a Lennox furnace which was used to heat the cafe portion of the building. Motor oil, fuel antifreezing additives and toilet paper were stored in the room. A workbench and a cot were in the room. Employees of Darrell and Frank sometimes slept on the cot and played cards in the room before and after work. Tommy was an employee of Darrell and Frank. On October 20, 1974, Tommy arrived at the Husky Car-Truck Stop several hours early for work, having secured a ride with his brother who worked an earlier shift. Tommy was seen walking to the back of the station with about twenty-five cents worth of gasoline in a cut off plastic bottle; and about five to ten minutes before the fire, he carried out some sandwiches and soft drinks from the cafe. The fire started in the storage room. The first person to arrive at the fire saw the cot, Tommy and a sleeping bag on fire.

After the close of evidence, the court granted Husky's motion for a directed verdict. The jury returned a verdict in favor of Darrell and Frank. Mora appeals from the order directing the verdict and from the judgment entered on the jury verdict. Mora sets forth the issues on appeal as follows:

1. Did the trial court err in granting defendants' Motion in Limine with regard to Wyoming's Occupational Health and Safety statute?

2. Did the court err in [not] giving plaintiff's proffered instructions on the National Fire Protection Code which is incorporated as part of Wyoming Statutes pursuant to W.S. § 35-436.17 (1975 Cum.Supp.)? (Bracketed word added to conform the issue with the facts and with Mora's argument on the issue.)

3. Did the court err in not instructing on the invitee-licensee distinction to the jury?

4. Did the court err in granting a directed verdict in favor of defendant, Husky Oil Company?

5. Did the court err in allowing the expert hearsay testimony of Mr. Swan regarding Tommy Mora?

Since we do not find that the trial court erred in these respects, we affirm.

## EXCLUSION OF OSHA AND NFPC REGULATIONS AND STANDARDS

The first two issues presented by Mora have to do with the trial court's rulings which allegedly excluded Mora from introducing into evidence certain regulations and standards promulgated by the Federal Occupational Safety and Health Administration and by the Wyoming Occupation Health and Safety Commission (both hereinafter OSHA) and certain code provisions of the National Fire Protection Code (hereinafter NFPC), and having to do with the trial court's refusal to give two instructions purportedly setting forth two of these regulations.

The trial court's order resulting from the May 11, 1978 pretrial conference included the following direction:

"3. The parties will advise the Court, on or before August 1, 1978, as to what facts they can stipulate and also any additional requested instructions, and particularly instructions as to pertinent laws and regulations."

On June 14, 1978, the trial court ordered Mora to answer three specified interrogatories by June 26, 1978. The interrogatories requested identification of the sections of the OSHA regulations and NFPC codes which Mora alleged were violated by Darrell and Frank. The order specified that failure of Mora to do so would preclude reliance on such sections at the trial.

With reference to compliance with the court order pertaining to submission of instructions, the two instructions which Mora contends were improper were submitted on September 26, 1978, the first day of the trial.

With reference to compliance with the court order pertaining to answers to the three interrogatories, Mora responded on June 15, 1978 by referring to section 7510 and subsection 7530 of the NFPC. On June 26, 1978 Mora supplemented the response by listing sixteen sections and sections 6.a. through 6.j. of the Wyoming Occupational Health and Safety Commission Rules and Regulations, nine additional bulletins of NFPC, and 29 C.F.R. 1910.106, 1910.156, 1910.157 relative to Federal Occupational Safety and Health Administration Regulations. Darrell and Frank argue that this supplemental response was not within the spirit of the court order, being general in fashion with the regulations there listed actually consisting "of several hundred pages and whole pamphlets of the NFPA."

On September 22, 1978, Darrell and Frank filed a motion in limine in which a limitation was requested upon injection of OSHA or NFPC regulations into the trial except the NFPC sections referred to in Mora's June 15, 1978 response to the interrogatories. The record does not reflect an order relative thereto; but in a colloquy at

the bench during the testimony of the seventh witness, reference was made to a hearing on the motion and the court commented:

"You were told that you could not use the OSHA regulations because you did not specify the specific segments there that you intended to rely upon, and I think I've already ruled on it and that's what it's going to be."

■ On the basis of that which we have before us, it would seem that the trial court had determined that Mora had not complied with its previous order relative to proper designation of the sections of OSHA and NFPC upon which she intended to rely. The section and subsection referred to in Mora's June 15, 1978 response to the interrogatories were referred to and used by Mora's expert witness. The sanction imposed by the court was pursuant to Rule 37(b)(2)(B), W.R.C.P. Broad discretion is given to the trial court with regard to sanctions, *Craig v. Far West Engineering Company*, 9th Cir. 1959, 265 F.2d 251, cert. den. 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959), even to the point of dismissing the action, *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). The parties were again made aware of the trial court's attitude with reference to timely compliance with its orders by an order made on September 5, 1978, in which it stated that:

"2. No witness or exhibit not named or listed in the Joint Statement may testify or be offered at the trial if application was not made to the Court, and so ordered by the Court, prior to August 27, 1978. * * *

"3. No instructions concerning violations of any statute or regulation not submitted to this Court prior to August 1, 1978, as ordered by the Court, will be given."

■ In any event, any evidence relative to the challenged rules, regulations and codes could not have been made a basis for an instruction relative thereto inasmuch as such instructions were submitted by Mora almost two months after the deadline set in the pretrial order by the trial court for doing so. The complaint was filed in this case on February 12, 1976. After two years in which to prepare for trial, the time set by the court for submission of instructions cannot be said to be unreasonable. Mora failed to comply with the timetable set forth in the court's order. The order was not arbitrary or an abuse of discretion. See *Martinez v. State*, Wyo., 611 P.2d 831 (1980) re abuse of discretion. It was not error for the court to refuse to give Mora's two instructions which were not timely submitted.[1] Evidence concerning application of rules, which rules cannot be the subject of instructions, would be without purpose.

## FAILURE TO INSTRUCT ON INVITEE– LICENSEE DISTINCTION

■ The trial court instructed the jury that Tommy was a licensee upon the premises at the time of the fire, and it recited the duty of care owed to him.

Mora did not object to the instruction, and Mora did not offer another instruction with respect to such status.

The instruction therefore became the law of the case. *Pure Gas and Chemical Company v. Cook*, Wyo., 526 P.2d 986 (1974); *Texas Gulf Sulphur Company v. Robles*, Wyo., 511 P.2d 963 (1973); *Cox v. Vernieuw*, Wyo., 604 P.2d 1353 (1980).

Error may not be assigned in such instance.

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he

---

1. Mora's two requested instructions purported to set forth regulations applicable to installation of heating equipment. One instruction referred in two places to "an area classified by Table VII–1." The other referred to "Class I liquids." The table was not set forth in the instruction or otherwise oriented with its reference therein, and Class I liquids were not defined. Being incomplete, the instructions could have been refused on such basis.

objects and the grounds of his objection. * * * " Rule 51, W.R.C.P.

## DIRECTED VERDICT FOR HUSKY

To determine the propriety of the directed verdict for Husky in this case, we must first determine if Husky owed a duty to Tommy.

" * * * The essentials of negligence are duty on the part of defendant, failure to perform the duty, proximately causing damage to plaintiff. * * * " *Danculovich v. Brown*, Wyo., 593 P.2d 187, 195 (1979).

As said in *Maxted v. Pacific Car & Foundry Company*, Wyo., 527 P.2d 832, 835 (1974):

" * * * Recovery for negligence rests upon a legal duty owed by defendant to plaintiff, *Brubaker v. Glenrock Lodge International Order of Odd Fellows*, Wyo., 526 P.2d 52, 58; *Guinand v. Atlantic Richfield Company*, 10 Cir., 485 F.2d 414, 417. *The determination of the standard of care or duty is a matter of law and not the province of the jury * * *.*" (Emphasis added.)

The extent of a lessor's duty to a lessee or others on the leased premises is set forth in *Hefferin v. Scott Realty Co.*, 71 Wyo. 114, 124–125, 254 P.2d 194, 197 (1953):

" * * * [I]t is stated in 32 Am.Jur. § 662, p. 526, as follows: ' * * * the landlord is not responsible to the tenant for injuries to person or property caused by defects in the demised premises where the landlord has not made any warranty or contract as to the condition of the demised premises or as to the repair of defects and is guilty of no wilful wrong or fraud.' * * * "

The general rule recited in Restatement of Torts 2d § 355, p. 239 (1965) is:

"Except as stated in §§ 357 and 360–362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."

See *Parrish v. Witt*, 171 Mont. 101, 555 P.2d 741 (1976).

Mora refers to provisions in the lease which authorize the lessee to "change" the leased property only with consent of Husky and which contains a reservation by which Husky has the right to inspect the premises and to go upon them "to make necessary repairs." Such provisions do not amount to a contractual assumption of a duty or responsibility to lessee or others for injuries resulting from use or conditions of the premises which occurred after lessee took possession of the premises and which were not a result of negligent repair or improvement made by Husky. The provisions do not make Husky an insurer. The lease provides that none of its provisions "shall be construed as reserving to Husky any right to exercise any control or direct the business of Lessee conducted upon the leased property."

The liability, if any, to Mora for Tommy's death, even if caused by the condition or use of the premises, was that of Darrell and Frank, and not that of Husky. Therefore, it was proper to direct a verdict for Husky.

## ADMISSION OF SWAN'S EXPERT TESTIMONY

Deputy State Fire Marshal Charles Swan testified as an expert witness *for Mora*. On *cross-examination*, he was asked the following questions and he gave the following answers:

"Q. On the basis of all of your investigations you reached a conclusion on the cause of this fire, didn't you?

"A. Yes, it was my conclusion—

"Q. What was your conclusion?

"A. —that I was told that Mr. Mora [Tommy] took two containers, the same container but he used it twice to take gasoline up to this storage room.

"MR. VAN COURT [one of Mora's attorneys]: I object, Your Honor. There's no evidence as to that information." (Bracketed material added.)

Considerable colloquy ensued between court and counsel. The court's attention

was directed to Rule 705, W.R.E., which provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

And to Rule 704, W.R.E., which provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

The court inquired of Mr. Reeves, one of Darrell and Frank's counsel, whether there would "be further testimony concerning what happened to the gasoline," to which Reeves responded, "Oh, certainly." And again, when the court asked if there would be "other testimony that will back this up," Reeves said, "There certainly is. Mrs. Mora will say that that's what her son who was there told her."

After the court overruled the objection, Swan testified:

"My conclusions were that since Mr. Mora [Tommy] was seen getting gasoline and assumed to have taken it up to the storage room to clean parts, that this was the cause of the fire and his eventual death." (Bracketed word added.)

Mora contends that the admission of this testimony was error because the subsequent "back up" testimony was not presented.

Tommy's brother later testified that he saw Tommy get gasoline in a plastic container on two occasions on the date of the fire, pay for it, and carry it toward the back of the building. He testified that the "course" Tommy took toward the back of the building was that regularly taken to go to the mezzanine store room. He testified that he told his mother about the fire immediately after it occurred, but that he could not recall whether he told her that Tommy was cleaning parts with gasoline at the time of the fire. He testified that he would not deny so telling her if she said he did.

Tommy's mother testified that Tommy's brother told her:

"* * * that Tommy had gotten gasoline and that he thought that he was going to clean something. He just assumed that that's what he was doing. He didn't see him. I asked him. He said he didn't see him."

She acknowledged that she had given a deposition in which she stated that she was told that "he had gone to get gas in a little plastic container of some kind to clean tools" and "Tommy had told him that he was going in to the back there to clean some tools."

■ Mora did not, thereafter, make a contention to the trial court that testimony to "back up" witness Swan's data and facts upon which he based his expert opinion was not thus subsequently presented. Her specific allegation of error was therefore not presented to the trial court. The court was not alerted to the existence of a question as to a proper course of action to follow. If there was an error, it was not properly preserved for appeal. *Padilla v. State*, Wyo., 601 P.2d 189 (1979). See Rule 103(a), W.R.E. Mora did not object to the instruction given by the trial court relative to testimony of expert witnesses, and she did not offer one relative thereto. The instruction given to the jury relative to expert witnesses provided in part that the jury should:

"* * * consider their [expert witnesses] relative qualifications and credibility, *as well as the reasons for the opinion* * * *.*" (Emphasis and bracketed material added.)

And that it should:

"* * * consider each expert opinion and give it such weight you think it deserves, but you are not bound to accept such opinion as conclusive. If you decide that the opinion is not based upon sufficient education and experience, *or that the reasons given for it are unsound,* or that it is outweighed by other evidence, you may disregard it entirely." (Emphasis added.)

Rule 703, W.R.E. provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Accordingly, we cannot find that upon which to predicate error in allowing the questioned testimony of witness Swan.

## COUNTERCLAIM

Darrell and Frank filed a counterclaim against Mora for damages, alleging that such resulted because Tommy started the fire. Mora did not file a timely reply. On September 25, 1978, the day before the trial was to commence, Darrell and Frank caused a default on the counterclaim to be filed. A belated reply was filed the next day. Prior to the start of the trial Darrell and Frank argued to the trial court that the default "acts as an adjudicatory or judicial admission that the negligence of" Tommy caused the fire and was greater than the negligence of Darrell and Frank; and that such was decisive in determining Mora's claim. The court reserved ruling thereon. Darrell and Frank presented the same argument in support of a motion for a directed verdict at the close of Mora's case. The court again reserved ruling. When the motion was renewed at the close of the evidence, it was denied.

Darrell and Frank now contend that the "appeal is premature because all issues have not been decided, and the entry of default is res judicata."

■■■ In Rule 55, W.R.C.P., a distinction is made between the *entry* of a default and the *judgment* by default. Darrell and Frank caused the default to be entered, but they did not secure a judgment thereon as required by Rule 55(b). Without the judg-

ment, the matter cannot, by definition, be res judicata. See *Associated Transport v. Batchellor*, 19 Conn.Sup. 285, 111 A.2d 692 (1955); *Blache v. Blache*, 69 Cal.App.2d 616, 160 P.2d 136 (1945).

A review of the evidence presented at trial and of that proposed to be presented as set forth in the pretrial statement fails to reflect any indication of the existence of proof to support the allegations of the counterclaim. The counterclaim was not predicated on negligence.[2] It alleges that Tommy "did intentionally and willfully set fire to and burn" the premises. Darrell and Frank did not make a representation to the court at any time that there was evidence of such intent and purpose on the part of Tommy. There was no evidence of such presented at the trial. The court recognized this in denying the motion of Darrell and Frank for a directed verdict on the counterclaim at the close of all evidence. If given an opportunity, the court probably would have sustained a motion for a directed verdict on the counterclaim in favor of Mora.

■■■ Although we cannot approve of Mora's failure to timely reply to the counterclaim, default judgments are not favored and we prefer that cases be tried on their merits. *Lake v. Lake*, 63 Wyo. 375, 182 P.2d 824 (1947); *Eager v. Derowitsch*, 68 Wyo. 251, 232 P.2d 713 (1951). We will recognize the propriety of default judgments in proper cases. See *Zweifel v. State ex rel. Brimmer*, Wyo., 517 P.2d 493 (1974). Justice would not prevail should we approve a judgment, default or otherwise, premised on a conclusion that facts were suggested in this record reflecting that Tommy started this fire "intentionally and willfully."

Additionally, the record does not reflect a presentation of the claim contained in the counterclaim in the probate of Tommy's estate prior to filing of the counterclaim as required by § 2-6-209, W.S.1977.[3] As stated in *Lo Sasso v. Braun*, Wyo., 386 P.2d 630, 632 (1963):

> "No holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator * * *."

---

2. The belated reply responds as if the counterclaim was founded on negligence.

3. Section 2-6-209, W.S.1977 provides in part:

" * * * [I]t is sufficiently settled in this jurisdiction that the timely presentation of a claim in probate is a prerequisite to the maintaining of an action thereon. It is equally well settled that the presentation of the claim and its disallowance or delay in allowing are, under our probate code, necessary allegations in a suit against an executor or administrator. * * * "

The failure to plead or prove that the claim was presented in probate is a jurisdictional defect. If a subject matter jurisdictional defect exists, it cannot be waived by the parties, and the court not only cannot ignore it but has an obligation to raise the question sua sponte. *Mountain West Farm Bureau Mutual Insurance Company v. Hallmark Insurance Company*, Wyo., 561 P.2d 706 (1977); *McLaughlin v. Upton*, 2 Wyo. 32 (1879); *Ruby v. Schuett*, Wyo., 360 P.2d 170 (1961).

Affirmed and remanded for the purpose of entering an appropriate order with reference to the counterclaim pursuant to this opinion.