**Annette R. YATES, Appellant (Defendant),**

v.

**Charles J. YATES, Appellee (Plaintiff).**

No. 84–226.

Supreme Court of Wyoming.

July 1, 1985.

BROWN, Justice.

This is an appeal from an "Order Modifying Decree of Divorce." The order changed child custody and clarified and modified the original decree of divorce regarding alimony. According to appellant the issues are:

## I

"Did the Trial Court deny the Appellant's right to due process when it decided the issue of her daughter's custody without giving the Appellant an opportunity to present relevant testimony regarding that issue?

## II

"Did the Trial Court abuse its discretion when it changed the custody of Amy Yates?

## III

"Did the Trial Court commit error when it modified those provisions of the original Decree of Divorce and the parties' property settlement regarding periodic monthly payments to the Appellant?"

We will affirm.

The parties here were divorced in December, 1980. The divorce decree awarded appellant custody of the parties' three minor daughters, and awarded appellee visiting privileges. Appellant was awarded alimony in eighty monthly installments. The divorce decree recited that the parties had stipulated regarding a property settlement. The court approved such settlement.

After the divorce the parties had a multitude of problems regarding visitation rights. A phenomenon rarely seen by a trial judge, if ever, is a post-divorce squabble where all the equities are on one side. This case is no exception.

In February, 1983, appellee filed a petition to modify the divorce decree with respect to alimony and visitation. An amended petition to include changing the custody of Amy Yates was filed July 14, 1983, during the time Amy was visiting her fa-

William J. Flynn, Green River, for appellant.

Jere Ryckman, Green River, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ther. On August 23, 1983, the district court entered an ex parte order granting temporary custody of Amy Yates to appellee. A trial to the court on appellee's amended petition was had on June 21 and 22, 1984. The court entered an order on July 24, 1984, awarding custody of Amy Yates to appellee, and modifying the alimony provisions of the divorce decree.

### I

The appellant complains on appeal, "The announcement of the judge's decision before the appellant had rested her case injected serious procedural error of constitutional dimensions into the case." The contention by appellant that the judge decided the case before she rested seems to be an afterthought, and perhaps did not occur to appellant until she filed her brief.

█ True, appellant never recited the magic words, "Defendant rests"; however, it appears that everyone understood that all the testimony from both sides had been produced and all exhibits received in evidence before the judge talked to the minor children. In any event, appellant never indicated to the trial judge that she had any additional evidence to produce, nor has she told this court what additional evidence she wanted to produce. Appellant further complains that the judge told the minor children that he was going to let Amy stay with her father before he had finished his talk with the children.

At the June 21–22, 1984, trial, appellee called several witnesses to testify in support of his petition to modify tne divorce decree. One of his witnesses was Amy Yates, who was cross-examined by appellant's attorney. Appellant called two expert witnesses and also testified on her own behalf. After the recross-examination of appellant, both appellant and appellee told the court that they had nothing further. The court then asked appellant a few questions. After this colloquy the record reveals the following:

"THE COURT: Does counsel have anything further?

"MR. RYCKMAN: No, Your Honor.

"MR. FLYNN: No, Your Honor.

"THE COURT: All right. I want to see those children. And I'd like to see counsel in chambers and we'll arrange a time. We stand adjourned. [Whereupon, court was adjourned at 5:30 p.m., Thursday, June 21, 1984 * * *.]"

The following afternoon, the judge talked to the three minor daughters of the parties in chambers. Only the judge, the three daughters, and the court reporter were present. During this in-chambers discussion with the children, the judge said that he was going to let Amy stay with her father.

█ It should not come as a great surprise to counsel that sometimes a trial judge decides the outcome of a case before the last word of testimony goes into the record. It would be somewhat unusual, however, for the judge to reveal his decision before all the testimony is in the record. In the context of the trial judge's interview with the three minor children, an early indication of his custody determination was logical and was important to the main purpose of the interview, that is, preparing the minor children for the changes affecting their lives.

The kindly trial judge had an informal, fatherly talk with the three girls. He assured them that both parents loved them. He explained to them the purposes of the trial, and tried to condition them to the fact that Amy would be living in Wyoming and the other two girls in California. The judge talked to them about Amy's visitation in California and Julie's and Molly's visitation in Wyoming. The judge tried to find out about problems the girls had with each other, with their parents and with their step-mother. The judge's final order modifying the decree of divorce reflected some of the problems expressed by the girls during the in-chambers interview.

Appellant cites *Tanner v. Tanner,* Wyo., 482 P.2d 443 (1971), in support of her first assignment of error. In *Tanner* the trial court modified custody without a hearing. In this case, however, a lengthy hearing

was held, and appellant was not precluded in any way from producing what evidence she desired. Appellant's first assignment of error is without merit.

## II

In her second assignment of error appellant contends that the trial court abused its discretion when it changed the custody of Amy Yates from appellant to appellee. The statutory authority for a judge to change the custody of minor children is § 20-2-113, W.S.1977:

"(a) * * * On the petition of either of the parents, the court may revise the decree concerning the care, custody and maintenance of the children as the circumstances of the parents and the benefit of the children requires."

In *Ayling v. Ayling,* Wyo., 661 P.2d 1054, 1056 (1983), this court said:

"* * * [T]he party seeking to modify the child custody provisions of a divorce decree must show that there has been a substantial change in circumstances since the entry of the original decree warranting a modification of the child custody provisions. [Citations.] In ruling on the modification of the child custody provisions, the district court must strive to achieve a reasonable balance between the rights and affections of the parents, while giving paramount consideration to the welfare and needs of the children. [Citations.]

"The party moving to modify the child custody provisions of a divorce decree has the burden of showing that a change in circumstances has occurred, that the change warrants modification of the decree, and that the modification will be in the best interests of the children. [Citations.] In this respect, we will not interfere with the decision of the district court unless there is a procedural error or unless there is shown to be a clear abuse of discretion. [Citations.]"

In *Ayling* we quoted with approval *Martinez v. State,* Wyo., 611 P.2d 831, 838 (1980), as follows:

"A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. * * *"

There are two other considerations applicable to the facts of this case. One, ordinarily there should not be a change in custody because of transient circumstances, and two, custodial preference by the affected child is a factor to be considered, but such preference is not conclusive. *Douglas v. Sheffner,* 79 Wyo. 172, 331 P.2d 840 (1958).

Here, some of the changes in circumstances since the original divorce decree are: 1) Appellee purchased the family home in Green River; 2) appellee married Anita Yates who loves and has a good relationship with Amy; 3) appellee experienced difficulty with appellant in visiting and communicating with Amy; and 4) Amy has been in three different schools. In addition to the identifiable changes in circumstances the trial court must also consider the effect these changes have had on the child. Here, there was evidence of more stability in Amy's life since living with her father. Although the Green River school is more difficult than the California school, Amy makes the honor roll. She is happy and exhibits more confidence, and the increased stability has contributed to increased self-esteem. Additionally, Amy has expressed a strong preference to living with her father, and is now back with former childhood friends.

In a custody hearing a minor child will ordinarily favor the parent he or she lived with just before the hearing. In this case appellant suffered some disadvantage because Amy had lived with her father for almost a year before the change of custody hearing. Despite appellee's protestations to the contrary, we would be surprised if he did not try to ingratiate himself with

Amy during the time just before the hearing. Ideally, a child should be in a neutral environment before he or she states a preference concerning custody.

However, the trial judge has had long experience in custody matters and no doubt scrutinzed Amy's testimony carefully when she said her father had not tried to influence her, and when she expressed a desire to live with him. The preference of a child of sufficient age and maturity is a factor to be considered by a court in ascertaining what is in the child's best interests. In *Tytler v. Tytler*, 15 Wyo. 319, 338, 89 P. 1, 6 (1907), the court stated:

"* * * Such we think is the general rule; for, if the happiness and welfare of the infant is to be consulted, nothing could be more potent upon that question than the expression of its preference based upon kindness or unkindness, care or want of care, love and affection or want thereof, and, as to the surrounding conditions, either with one or the other."

"It appears to be the almost universal rule that at least when a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment as to its future welfare, based upon facts and not mere whims, its wishes are one factor which may be considered by the court in determining custody, in doubtful cases in any event, usually not because of any legal right in the child to have its wishes granted, but because the consideration of such wishes will aid the court in making a custodial decree which is for the best interests and welfare of the child. * * *" 4 A.L.R.3d 1396, 1402 Custody-Child's Wishes (1965).

Courts in other jurisdictions have taken into consideration the wishes of children when determining custody. *duPont v. duPont*, 59 Del. 206, 216 A.2d 674 (1966); *State ex rel. Waslie v. Waslie*, 274 Minn. 564, 143 N.W.2d 634 (1966); *In re Marriage of Kramer*, 177 Mont. 61, 580 P.2d 439 (1978). In *Kramer* the court held:

"We are committed to the view that the welfare of the children is the paramount consideration in awarding custody. [Ci-

tations.] We believe the welfare of the children, particularly children of the ages involved here [the ages of the children involved were 11, 13, and 15] is not being served if their wishes are not considered by the trial court." Id., at 444.

■ The older a child becomes, greater weight should be given his preference; and as a child grows older, it is much more difficult to require him to remain in the custody of a parent he does not prefer. In addition, the preference which has a stated basis and is expressed in a plain manner should be accorded greater weight than one whose basis cannot be described. This is not to say that the preference of a minor child is controlling upon the court. See *Douglas v. Sheffner*, supra.

■ In determining the weight to be given a child's preference several factors should be considered: the age of the child; the reason for the preference; the relative fitness of the preferred and non-preferred parent; the hostility, if any, of the child to the non-preferred parent; the preference of other siblings; and whether the child's preference has been tainted or influenced by one parent against the other.

Although custodial preference is not conclusive, the court here was entitled to give more consideration to a fifteen-year old girl's preference than say, the preference of a six-year old child. Also, it should not be overlooked that Amy had stated a preference to live with her father as far back as the divorce in 1980, and had not changed that preference.

■ The judge's finding that there had been a substantial change in circumstances is principally a factual determination. We accord great deference to a trial judge's factual determination. The judge hearing a modification petition is in a better position to determine the credibility of a witness and the value of the testimony. *Stirrett v. Stirrett*, 35 Wyo. 206, 248 P. 1 (1926).

With respect to substantial and material changes occurring after the divorce, we have said:

"* * *'Substantial' and 'material' are words of degree. An exercise of discretion is involved in applying them. If the trial court did not abuse its discretion in applying these words to the matter before it, we cannot second guess its decision." *Alying v. Alying,* supra, at 1057.

█ The trial judge here could reasonably conclude that appellee should have primary custody of Amy, and under the circumstances of this case, the judge's determination did not exceed the bounds of reason. We hold that there was no abuse of discretion in the judge's determination.

Appellant makes additional complaints not raised as issues. The order modifying the decree, paragraph 8, provides: "* * * neither party shall file any legal proceedings affecting the custody of any of said children while said child is visiting said parent. * * *" Appellant complains that the trial judge by the quoted provision in the decree is attempting to prohibit appellant from doing exactly what appellee did here, that is, petition for a change in custody when Amy was visiting him. Also appellant complains that the court entered an ex parte order August 23, 1983, awarding temporary custody of Amy to appellee.

█ We sympathize with appellant, noting that her complaints are not totally without merit. However, these complaints were not raised as issues and no authority is cited in support of her contentions. We therefore decline to address these two matters.

### III

Since the original decree of divorce in December 1980, a problem developed between the parties regarding the interpretation of paragraph 13 in the decree of divorce. Succinctly, if the payments provided for in paragraph 13 are alimony, an income tax advantage inures to appellee. Conversely, if the payments are part of a property settlement, then an income tax advantage inures to appellant.

Paragraph 13 in the decree of divorce provided:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that due to Defendant's lack of a college education, lack of employable skills and medical condition, Plaintiff be, and he is hereby, ordered to pay to Defendant the sum of $300.00 per month alimony, beginning the 15th day of December, 1980, and continuing on the 15th day of each and every month thereafter for a total of eighty (80) months. That should Plaintiff die prior to said alimony being paid in full, Plaintiff's estate, assignees and devisees shall be liable for the balance."

The language in the decree is identical to the language contained in the parties' stipulation and agreement entered into before the decree of divorce. In his petition to modify the "Decree of Divorce," appellee asked the court to construe the above provision in the divorce decree to the effect that the payments provided for therein are alimony and not payments as part of a property settlement.

In his petition appellee also asked for other and alternative relief with respect to the alimony provision in the decree of divorce. The court's "Order Modifying Decree of Divorce," paragraph 10 provides:

"10. That Charles Yates shall continue to pay alimony according to the terms of the original Decree of Divorce except that the sentence 'That should plaintiff die prior to said alimony being paid in full, Plaintiff's estate, assignees and devisees shall be liable for the balance.', shall be stricken from the Decree to more properly reflect the intent of said Decree that said payments are alimony. "That paragraph #13 of said Decree concerning alimony shall be amended to properly reflect the intent of said paragraph that said payments are, and were, deductible by Charles Yates and taxable income to Annette Yates, as said payments were 'alimony' and not part of a property settlement. * * *"

In connection with the divorce proceedings a stipulation and agreement entered into by the parties purported to equitably divide the property interests of the parties.

The list of property was long and detailed, but there is no indication that appellee received any advantage in the property division. As far as we can tell, there was no property going to appellee that required the payments by appellee to appellant to make the property disposition "just and equitable" as required by statute, § 20–2–114, W.S.1977. The payments termed alimony, agreed to by the parties and approved by the court, were ordered for the support of appellant due to her "lack of a college education, lack of employable skills, and medical condition." The reasons recited for making the payments provided for in paragraph 13 of the "Decree of Divorce" are consistent with the usual reasons for alimony.

Paragraph 13 in the last sentence of the decree of divorce provided: "That should plaintiff (appellee) die prior to said alimony being paid in full, plaintiff's estate, assignees and devisees shall be liable for the balance." This last sentence is inconsistent with the payments being alimony. *Warren v. Warren,* Wyo., 361 P.2d 525 (1961). However, there was testimony that this last sentence was put in the stipulation and agreement because of appellee's heart problem.

In *Warren v. Warren,* supra, the decree of divorce provided that the wife be granted permanent alimony of $500 per month as long as she lived or until she remarried, and the alimony awarded was made a charge against the husband's estate. In the *Warren* case the husband received property equivalent to $750,000, while the wife received only $54,500. The court in *Warren* held that the portion of the decree awarding alimony was

"* * * somewhat ambiguous by phraseology which in some portions indicates that the court was awarding alimony and in others that a disposition of the property was being made. The court's use of the word 'alimony' might in one aspect conceivably refer to support and maintenance, had it not been termed permanent

and made a charge upon the husband's estate * * *." Id., at 527.

The court further stated:

"Alimony granted as support and maintenance terminates upon the death of either of the parties. [Citations.] This is not true, however, of payments which are themselves an integral part of the adjustment of property rights. [Citations.] * * *

"* * * In *Lonabaugh v. Lonabaugh,* 46 Wyo. 23, 22 P.2d 199, 201, a distinction was made between alimony as such and payments which are termed alimony but in reality constitute a property settlement. * * *

"If the provision for the wife were to be construed as being alimony in the sense of support and maintenance and terminable upon the death of either of the parties, it would be inequitable. The disparity in the amounts of the property set over is too great * * *. On the other hand, if the provision is to be construed as a disposition of property or an adjustment of property rights, and if the alimony be permanent in a real sense, the amount which said wife could reasonably expect to receive would be such that, although not equal to that taken by the husband, it might well have been considered by the court in its discretion as being just and equitable.

"We think that a reasonable construction of the decree shows it to have been intended as a disposition of property or a property settlement * * *." Id., at 527–528.

The case before us is distinguishable from *Warren v. Warren,* supra. In *Warren* the husband received more than thirteen times the amount of property that the wife received. The court determined that it would be inequitable if the $500 per month were considered alimony, and therefore concluded that such payment was part of the property disposition.

In the case before us, as in *Warren,* there is an ambiguous provision in the decree of divorce regarding alimony. Unlike Warren, the division of property here was

nearly equal. At least, no one claims otherwise. The district judge determined that paragraph 13 in the decree of divorce provided for alimony and in the modification order deleted language originally in paragraph 13 that sounded in property settlement. The principles set out in Warren were not violated here by the trial judge because of a different factual circumstance.

The trial court had authority to revise and alter the decree concerning alimony. Section 20–2–116, W.S.1977. The court in the modification order clarified its intent regarding support payments. Considering the substantially equal division of the marriage property and the stated purpose of the "alimony" payments, we cannot say that the trial judge erred in his determination that the eighty monthly payments were indeed alimony.

We affirm the district court order in all respects.