Harold SPITZER, Appellant
(Defendant),

v.

Ann Marie SPITZER,
Appellee (Plaintiff).

No. 87–123.

Supreme Court of Wyoming.

July 3, 1989.

Clifford J. Neilson and Dallas J. Laird, Casper, for appellant.

Larry R. Clapp of Clapp and Barksdale, P.C., Casper, for appellee.

Before BROWN,* C.J., and THOMAS, CARDINE,** URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a divorce decree entered as a default judgment and which awarded alimony and a general property settlement without a hearing. Appeal is also taken from a nunc pro tunc order amending the divorce decree.

We reverse.

Appellant Harold Spitzer raises the following issues:

1. Whether Mr. Spitzer, who stands in contempt of the district court, has standing under the facts of this case to present an appeal to this Court;

2. Whether it was error for the district court to enter its divorce decree which included matters outside the divorce complaint without conducting an evidentiary hearing, by affidavit or otherwise, to consider the allegations made by appellee Ann Marie Spitzer in her complaint;

3. Whether it was error for the district court to include a provision in its divorce decree making the payment of $600,000 as and for alimony the obligation of Mr. Spitzer and his executor, trustee, or successor after his death; and

4. Whether it was error for the district court to amend its divorce decree by its March 16, 1987, nunc pro tunc order without a motion or notice to Mr. Spitzer.

* Chief Justice at time of oral argument; retired June 29, 1988.

** Became Chief Justice June 30, 1988.

The approach of appellee Ann Marie Spitzer to the question of this Court's jurisdiction to hear this appeal, raised by Mr. Spitzer in his first issue, is somewhat different. She phrases the issue as being:

1. Whether an appeal may be taken from a default judgment without there having first been a motion for relief under Rule[s] 55(c) and 60(b), W.R.C.P.

On November 10, 1986, Ms. Spitzer filed a complaint praying that her marriage to Mr. Spitzer be dissolved, that the court equitably divide their assets and debts, that she be granted support while the action was pending, and that the court grant such other and further relief as it deemed just and proper. Ms. Spitzer also requested and received a temporary restraining order prohibiting Mr. Spitzer from disposing of or encumbering various assets of the parties during the pendency of the divorce action.

Mr. Spitzer answered and counterclaimed for divorce. Whereas Ms. Spitzer requested an equitable division of the marital property, Mr. Spitzer requested that the property division be determined in relation to the property and assets each party brought into the marriage. Mr. Spitzer also moved to quash the restraining order. Although this may be somewhat speculative, the record strongly indicates that Mr. Spitzer then appropriated all the property of the parties which had any liquidity and moved it out of the jurisdiction.

On January 12, 1987, Ms. Spitzer filed a notice of deposition in which she demanded that Mr. Spitzer produce certain items and documents relating to the parties' mutual assets and properties. She also filed a motion to compel, seeking court enforcement of this notice of deposition. The motion to compel was requested because, prior to that time, Ms. Spitzer had served Mr. Spitzer with a "First Request for Production of Documents" to which he had failed to respond. The deposition was scheduled for January 22, 1987. Mr. Spitzer did not appear at the deposition nor did he furnish, in any form, the various items and documents Ms. Spitzer had requested. As a result, Ms. Spitzer then filed a combined "Motion to Compel, Motion for Sanctions, and Motion for Attorney's Fees."

On January 26, 1987, the district court conducted a hearing on all of Ms. Spitzer's motions and on Mr. Spitzer's motion to quash. On February 3, 1987, the district court entered an "Order and Judgment" granting all of Ms. Spitzer's motions and denying the motion to quash. This order and judgment provided in pertinent part:

1. That [Ms. Spitzer's] Motion to Compel, Motion for Sanctions, and Motion for Attorney's Fees shall be, and hereby is, granted. *[Mr. Spitzer] shall have ten (10) days from the date of the Court's entry of the within Order and Judgment in which to produce the documents requested in [Ms. Spitzer's] First Request for Production of Documents, failing, in which, [Mr. Spitzer] shall be deemed in default, and [Ms. Spitzer] shall then be granted her divorce, and [Ms. Spitzer] shall retain any and all assets she deems are properly hers.* [Ms. Spitzer] shall have Judgment against [Mr. Spitzer], and [Mr. Spitzer] shall pay to [Ms. Spitzer] the sum of $125.00 as and for costs associated with the deposition of [Mr. Spitzer], which was scheduled for January 22, 1987, and which [Mr. Spitzer] did not attend, the amount for which, let execution issue.

(Emphasis added.)

Mr. Spitzer again failed to respond, and on February 17, 1987, Ms. Spitzer filed an "Application for Default Judgment." The district court made its entry of default on that same day. Also on February 17, the district court entered the divorce decree as a default judgment. The decree granted Ms. Spitzer a divorce and provided for a property division and an alimony award. The decree noted that "[Mr. Spitzer] has willfully, intentionally, and without just cause violated the Order and Judgment filed herein on February 3, 1987, thereby mandating this Decree of Divorce and Judgment to be entered by default." The decree awarded Ms. Spitzer certain real and personal property, apparently consistent with the provision in the prior order and judgment that she would retain such

property as she deemed to be properly hers. With respect to alimony, the decree provided that Mr. Spitzer was to pay Ms. Spitzer $600,000 in monthly installments of $5,000 and that Mr. Spitzer's obligation to pay would terminate upon the death of Ms. Spitzer. The decree further provided, however, that the alimony obligation "will be an obligation of [Mr. Spitzer], [Mr. Spitzer's] executor, trustee, or successor after [Mr. Spitzer's] death."

Mr. Spitzer thereafter filed three motions to amend the judgment. Two of the motions asserted that certain of the property awarded Ms. Spitzer did not belong to Mr. Spitzer but instead were owned by his son and daughter and should be excluded from the decree. These motions were denied. The district court did grant the other motion which requested a change in the decree to reflect the correct marriage date for the parties.

On March 10, 1987, Ms. Spitzer filed numerous motions contained within a single document. Included in that document was a motion for contempt alleging that Mr. Spitzer had directly and intentionally violated the restraining order and original decree by improperly converting property included in those orders and by failing to make alimony payments. After a hearing, the district court entered its order granting Ms. Spitzer's motion for contempt and ordered that a bench warrant be issued for the arrest of Mr. Spitzer and that a $300,000 cash bond be posted for his release in the event he was incarcerated pursuant to that bench warrant. Additional post judgment activities are reflected by the entry, upon application of Ms. Spitzer's counsel, of several orders styled "Order Nunc Pro Tunc," which amended the original decree by adding specificity to certain of the property descriptions and by awarding additional real property to Ms. Spitzer which had not been included in the original divorce decree. This appeal was then perfected.

## JURISDICTION

Ms. Spitzer contends that no jurisdiction lies for this appeal because Mr. Spitzer failed to initially seek relief at the district court level from the decree of divorce which was entered upon default. In support of her argument, Ms. Spitzer directs this Court to the cases of *Wyoming Insurance Department v. Sierra Life Insurance Company*, 599 P.2d 1360 (Wyo.1979), and *Robison v. Sales and Use Tax Division, State Tax Commission*, 524 P.2d 82 (Wyo.1974), which she believes hold that a default judgment may not be appealed until the complaining party has first moved to set aside the judgment pursuant to W.R. C.P. 55(c) and 60(b).[1]

We do not question that these cases stand for the proposition asserted by Ms. Spitzer. We note, however, that Mr. Spitzer is not contesting the facts respecting his liability as established by the entry of default. In this respect, the following language in 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.06 at 3–27 to 3–28 (2d ed. 1989), becomes pertinent:

> In federal practice a party who suffers judgment by default in effect confesses the truth of the facts respecting the claim *except for facts that in their nature require an examination of details*, as, for example, *the amount of damages when the claim is unliquidated*. If he

1. W.R.C.P. 55(c) provides:

> *Setting aside default.*—For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered may likewise set it aside in accordance with Rule 60(b).

W.R.C.P. 60(b) provides in pertinent part:

> *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.*—On motion, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

later wishes to draw in issue the facts thus confessed, he must move in the trial court to set aside the judgment; he cannot draw in issue the facts by appealing directly from the default judgment, because on the record they stand confessed. But while the scope of review is thus limited on appeal from a default judgment, the mere fact that the party has defaulted below does not defeat his right to appeal. *He may, on direct appeal from the default judgment, attack it* for want of jurisdiction in the court, or for failure of the complaint to state a claim, *or for procedural irregularity in the course of the proceedings below.*

(Emphasis added.) Here, while not questioning his liability, Mr. Spitzer's appeal contests the procedures in the district court, including specifically the award of property and alimony from an unliquidated claim. Thus, we are not convinced that Mr. Spitzer would be precluded from bringing this appeal by a failure to move to set aside the judgment. We believe, however, that Mr. Spitzer did in fact adequately seek the required relief from the trial court.

We recognize that W.R.C.P. 7(b)(1) provides in applicable part:

(b) *Motions and other papers.*

(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, *shall state with particularity the grounds therefor, and shall set forth the relief or order sought.*

(Emphasis added.) Correspondingly, however, in 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2693 at 483–85 (1983), the authors state:

The courts continually struggle with the conflict between the need to combat delay and disregard of the rules and their desire to do justice in the case before them. * * * [S]everal courts have concluded that Rules 55(c) and 60(b) express a policy of liberality toward motions for relief from default entries and default judgments. Further, they have

ruled that on a motion for relief from the entry of a default or a default judgment, all doubts should be resolved in favor of the party seeking relief.

■ An examination of the record in this case discloses that Mr. Spitzer filed three motions to amend the divorce decree on February 26 and 27, 1987. Two of those motions relied upon W.R.C.P. 59(e),[2] while the remaining motion recites no authority for its basis. In those motions, Mr. Spitzer asked the district court for partial relief from its final judgment. We hold, under the circumstances, that Mr. Spitzer substantially complied with W.R.C.P. 55(c) and 60(b) and that such compliance was sufficient to confer jurisdiction on this Court to consider his appeal from the default judgment entered against him.

We are also asked to decide whether a person who is in contempt of the district court has standing to present his case on appeal. Mr. Spitzer raised this issue himself, apparently anticipating that it would be an issue in this appeal. Ms. Spitzer, however, did not present or argue this issue in defending against the appeal. Consequently, we will not dismiss the appeal nor address this issue in the absence of adversative briefing on the question. We do note, however, that the power to dismiss in such situations has been treated as discretionary. *See* 4 Am.Jur.2d, *Appeal and Error* § 239 (1962). In addition, the general rule has been stated that

where an appeal or writ of error is a matter of right, the party aggrieved by a judgment or decree is not deprived of the privilege of having it reviewed by the fact that he is in contempt of court.

4 C.J.S., *Appeal and Error* § 208 at 611 (1957).

## DISPOSITION

■ Mr. Spitzer contends the district court abused its discretion when it entered its default divorce decree awarding relief to Ms. Spitzer beyond that requested in her complaint without conducting an evidentia-

---

**2.** W.R.C.P. 59(e) provides:

*Motion to alter or amend a judgment.*—A motion to alter or amend the judgment shall

be served not later than 10 days after entry of the judgment.

ry hearing to determine what were essentially unliquidated damages. We agree.

We have long recognized that default judgments are not favored in the law. *Claassen v. Nord,* 756 P.2d 189, 193 (Wyo. 1988); *Westring v. Cheyenne National Bank,* 393 P.2d 119, 122 (Wyo.1964). It is preferable that cases be tried on their merits. *Mora v. Husky Oil Company,* 611 P.2d 842, 849 (Wyo.1980); *Westring,* 393 P.2d at 122. In a proper case, however, we will recognize the propriety of a default judgment. *Mora,* 611 P.2d at 849.

Default, as a sanction for failure to comply with discovery orders, is expressly provided for by W.R.C.P. 37(b)(2)(C), which states in relevant part:

(b) *Failure to comply with order.*

    \*    \*    \*    \*    \*    \*

(2) \* \* \* If a party \* \* \* fails to obey an order to provide or permit discovery \* \* \* the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

    \*    \*    \*    \*    \*    \*

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party*[.]

(Emphasis added.)

A trial court has broad discretion in controlling discovery and in selecting the appropriate sanction for a willful violation of its discovery orders. *Farrell v. Hursh Agency, Inc.,* 713 P.2d 1174 (Wyo.1986); *Caterpillar Tractor Company v. Donahue,* 674 P.2d 1276 (Wyo.1983). When documents are demanded, a party is obligated to produce such documents unless he asserts a proper objection or moves for a protective order.[3] *Id.* Under circumstances where a party simply refuses to produce documents for discovery, the trial court has the inherent power to protect the administration of justice by imposing sanctions.

*Penthouse International, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371 (2d Cir. 1981). As stated in *Penthouse International, Ltd.:*

"Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.' *National Hockey League v. Metropolitan Hockey Club, [Inc.,* 427 U.S. 639,] 643, 96 S.Ct. [2778,] 2781[, 49 L.Ed.2d 747 (1976) (per curiam)]." [(Quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980)).]

    \*    \*    \*    \*    \*    \*

" \* \* \* [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." [(Quoting *National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781.)]

\* \* \* [G]rossly negligent failure to obey a discovery order may justify severe disciplinary measures:

    \*    \*    \*    \*    \*    \*

"These sanctions serve a threefold purpose.... [A]lthough the most drastic sanctions may not be imposed as 'mere penalties,' *Hammon Packing Co[mpany] v. Arkansas,* [15 Ann.Cas. 645,] 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909), courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault. \* \* \*

    \*    \*    \*    \*    \*    \*

" \* \* \* The principal objective of the general deterrent policy \* \* \* is strict order.

---

**3.** In this case, Mr. Spitzer did not assert an objection or make a motion for a protective

adherence to the 'responsibilities counsel owe to the Court and to their opponents,' 427 U.S. at 640, 96 S.Ct. at 2780. Negligent, no less than intentional, wrongs are fit subjects for general deterrence. And gross professional incompetence no less than deliberate tactical intransigence may be responsible for the interminable delays and costs that plague modern complex lawsuits." [ (Quoting *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067, 49 A.L.R.Fed. 820 (2d Cir. 1979).)]

Id. at 386–87 (citations omitted).

The record in the instant case demonstrates that Mr. Spitzer repeatedly and blatantly failed to obey the district court's orders on discovery. Initially, Mr. Spitzer ignored the "First Request for Production of Documents," although this omission did not violate a court order and was not subject to Rule 37 sanctions. Ms. Spitzer then obtained an order enforcing the discovery request and requiring compliance with her notice of deposition. Mr. Spitzer, in cavalier disregard of the court order, failed to respond to either discovery effort. Accordingly, the district court entered the order and judgment providing Mr. Spitzer ten additional days to produce the discovery documents upon pain of default for failure to comply. Mr. Spitzer again failed or refused to respond, and the district court entered default pursuant to W.R.C.P. 37(b)(2)(C).

Although the entry of default for failure to comply with court mandated discovery is a harsh penalty, we are persuaded that the district court acted within its discretion in doing so in this case. We conclude that default was an appropriate method to address Mr. Spitzer's recalcitrance under the circumstances. The district court did not abuse its discretion with respect to the entry of default against Mr. Spitzer.

Although we conclude the entry of default was appropriate in this case, we cannot justify the relief granted in the divorce decree operating as a default judgment. The distinction between an entry of default and a default judgment must here be recognized. *Mora,* 611 P.2d at 849. *See generally* 10 C. Wright, A. Miller & M. Kane, *supra* at §§ 2682 and 2683, and W.R.C.P. 55(a) and (b). Entry of default is normally a clerical act which may be performed by the clerk of court, and it does not constitute a judgment. The entry of default generally forecloses the party found to be in default from making any further defense or assertion with respect to liability or an asserted claim. *Zweifel v. State ex rel. Brimmer,* 517 P.2d 493 (Wyo.1974); 10 C. Wright, A. Miller & M. Kane, *supra* at § 2688. Although the entry of default generally establishes the fact of liability according to the complaint, it does not establish either the amount or the degree of relief. *Adel v. Parkhurst,* 681 P.2d 886, 890 (Wyo.1984); 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 55.03[2] (2d ed.1988).

The default judgment, on the other hand, in addition to the fact of liability, defines the amount of liability or the nature of the relief. This is generally done separately from the entry of default. Only in those situations where the damages sought are liquidated and claimed in the complaint may the court grant relief without further proceedings. This principle is encompassed in W.R.C.P. 54(c), which provides in part that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." [4] In certain circumstances, a claimed liquidated sum can be awarded by the clerk of court. W.R.C.P. 55(b)(1).[5] Where the damages or relief claimed are unliquidated or not specified with certainty

---

4. *See Zweifel,* 517 P.2d at 502, for an elaboration on the theory underlying W.R.C.P. 54(c). *See also Marriage of Leslie,* 112 Wash.2d 612, 772 P.2d 1013 (1989) (a default judgment granting relief beyond that sought in complaint without notice and an opportunity to be heard denied due process).

5. According to 10 C. Wright, A. Miller & M. Kane, *supra* at § 2683, an entry of default judgment on a liquidated claim may be made by the clerk of court only in those cases where the defaulting party failed to appear and not where the default involves a failure to participate in subsequent stages of the proceedings.

in the complaint, further proceedings are indicated. W.R.C.P. 55(b)(2) provides for entry of default judgment by the court. It reads, in relevant part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper, and shall accord a right of trial by jury to the parties when and as required by any statute.

In *Farrell,* 713 P.2d at 1179, we noted, with respect to the permissive nature of the above rule, that

> "Rule 55 does not require that testimony be presented as a prerequisite to the entry of a default judgment. However, when it seems advantageous, a court may conduct a hearing to determine whether to enter a judgment by default." 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2688 (1983).
>
> * * * The determination of whether a hearing is necessary under Rule 55(b)(2) is also within the sound discretion of the trial court.

The scope of discretion afforded the trial court under the rule, however, does not extend to the entry of a default judgment where the damages are not liquidated or articulated with certainty. In *Adel,* 681 P.2d at 892, we said:

> The burden, however, is upon those seeking more than mere nominal damages to prove their damages. The requirement of Rule 55(b)(2), W.R.C.P., of a hearing with respect to damages which are not liquidated is consistent with the rule of those cases. The default permitted by a defendant does not concede the amount demanded for unliquidated damages.

(Citations omitted.) *See also Midway Oil Corporation v. Guess,* 714 P.2d 339, 346 (Wyo.1986) (quoting in part and applying the above principle).

In issuing the divorce decree (here, as a default judgment), the district court was required to proceed in accordance with Wyo.Stat. § 20–2–114 (1977), which provides:

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

Essentially, the statute assigns to the court the function of making a just and equitable disposition of the property of the parties, and it allows for the provision of reasonable alimony. In order to accomplish its function under the statute, the court must have adequate information regarding the nature and extent of the property of the parties, including specific information identifying the property, such as record ownership to titled or real property. Additionally, in making an alimony award, the court must have information regarding the ability to pay. Where this information is essential for the entry of a proper judgment, the court abuses its discretion by simply entering a form of judgment tendered by one of the parties.

In the instant case, the divorce decree contains the only itemization or listing of property of the parties. The record is otherwise devoid of anything that identifies, in accordance with the prior order and judgment, "any and all assets she deems are properly hers." Further, what assets a party to a divorce deems to belong to that party may not be particularly relevant, as the property still must belong to the parties. Where, as here, the trial court delegates the property division to a party, it

abdicates its judicial function. The district court's statutory directive to make a just and equitable disposition of the parties' property and to provide for reasonable alimony cannot properly be assigned to one of the parties. Unless the parties have evidenced an agreement regarding alimony and a property division, the district court fails to perform its function by making such a determination without receiving evidence. Thus, we determine in this case that the district court abused its discretion in entering the divorce decree, as a default judgment encompassing a property division and alimony award, absent a hearing. Although the entry of default and Ms. Spitzer's grant of divorce will stand, we reverse for an evidentiary hearing respecting the property division and award of alimony.

Mr. Spitzer's remaining issues concern the alimony provision and one of the nunc pro tunc orders amending the property division of the divorce decree. Our holding requiring a hearing on the property division effectively disposes of any problems with the nunc pro tunc amendments adjusting the property award. Although the amount of the alimony award will similarly be subject to an evidentiary hearing, the nature of that provision presents a problem that will likely again be presented to the district court. It is proper for an appellate court to address questions that are bound to arise again. *McGuire v. McGuire,* 608 P.2d 1278, 1286 (Wyo.1980).

■ The problem with the alimony provision is reflected in paragraph 7 of the divorce decree, which provides in part:

The obligation to pay the total sum of Six Hundred Thousand Dollars ($600,000.00) under the terms as hereinbefore set forth shall be an obligation of [Mr. Spitzer], [Mr. Spitzer's] executor, trustee, or successor after [Mr. Spitzer's] death.

Mr. Spitzer asserts that such a provision is contrary to Wyoming case law. Ms. Spitzer contends that, inasmuch as Mr. Spitzer has not made a full disclosure of the assets acquired during the marriage, the alimony provision should be considered as an integral part of the adjustment of property

rights and should not terminate upon the death of either party.

In *Warren v. Warren,* 361 P.2d 525, 527 (Wyo.1961), we stated:

Alimony granted as support and maintenance terminates upon the death of either of the parties. This is not true, however, of payments which are themselves an integral part of the adjustment of property rights.

(Citations omitted.) *See also Yates v. Yates,* 702 P.2d 1252, 1258 (Wyo.1985), and *McMillan v. McMillan,* 702 P.2d 1279, 1282 (Wyo.1985). In this case, there is no question that the alimony award was intended as support and maintenance rather than as an integral part of the adjustment of property rights. Paragraph 7 of the decree expressly provided:

[Mr. Spitzer] shall pay to [Ms. Spitzer] the sum of Six Hundred Thousand Dollars ($600,000.00) *as and for alimony, and not for property settlement, as hereinbefore provided * * *.*

(Emphasis added.) Upon remand, however, if the district court makes a similar award intending it to be alimony, the provision should be designed to terminate upon the death of either party in order to be effective as intended and to avoid further contest as to its operation. We also note, as another reason to avoid any ambiguity, that certain tax consequences flow from the construction of such provisions by the Internal Revenue Service.

Reversed and remanded for further proceedings consistent with this opinion.

CARDINE, C.J., filed an opinion partially concurring and dissenting.

CARDINE, Chief Justice, partially concurring and dissenting.

I concur in the opinion of the court except for that part holding that the district court abused its discretion because it entered judgment without a hearing and without

"adequate information regarding the nature and extent of the property of the parties, including specific information identifying the property, such as record ownership to titled or real property. Ad-

ditionally, in making an alimony award, the court must have information regarding the ability to pay."

In this case the appellant steadfastly refused to give over to the wife and to the district court information consisting of income tax returns; financial statements; records pertaining to ownership of stocks, bonds, or cash; bank statements; information pertaining to assets of the marital estate in the possession of others; information pertaining to checking accounts; information pertaining to any assets in which the husband claimed an interest; life insurance policies; information pertaining to pension, profit sharing, and other retirement plans; and information pertaining to indebtedness owed to the husband.

I would hold that a hearing should be held at which the wife and husband might present their evidence. If the husband chooses not to appear or offer evidence, he is bound by the evidence received, and the court could enter an appropriate judgment based upon the only evidence available. Under the holding of the court as presently articulated, by refusing to disclose information, appellant can prevent forever entry of judgment.